THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT W. FENTRESS, Defendant-Appellant.

(No. 54172;

First District—May 3, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Ronald P. Katz, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Martin Moltz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LYONS delivered the opinion of the court:

Robert W. Fentress was convicted, following a trial by jury, of the offense of attempt rape (Ill. Rev. Stat. 1965, ch. 38, par. 8—4). Judgment was entered on the verdict and he was sentenced to a term of not less than six nor more than nine years in the Illinois State Penitentiary. On appeal the defendant contends:

1. That he was denied due process by reason of the trial court's denial of his motion to suppress certain physical evidence;
2. That the trial court erred in admitting evidence of separate unrelated crimes attributed to the defendant;
3. That he was not proven guilty beyond a reasonable doubt.

The evidence presented by the State established that at approximately 3:30 P. M. on the afternoon of June 13, 1967, the prosecutrix and a companion were accosted in Washington Park by a man wearing a black hat and pants, full length coat, yellow tinted glasses, and black shoes with silver buckles. He told them that he needed two girls for something and that he had money with which to pay them if they so desired. When they attempted to ignore him, he informed them that he had a gun and knife. His right hand was in his coat pocket and he appeared to be pointing an object at them with it.

Under his direction they then proceeded to an area in the park which is enclosed by bushes in the configuration of a horseshoe. There he directed the companion of prosecutrix to remove certain undergarments. She declined, stating that her menstrual cycle had begun. He then made a similar demand upon the prosecutrix and when she attempted to use the same excuse for noncompliance, he stated that he did not believe her and would kill her if he found her to be lying. She then complied with his demand and he pushed her to the ground. He then removed his right hand from his coat pocket while attempting to effect a personal exposure. At this point the prosecutrix noticed that his coat pocket appeared to be flat, that it contained no gun. She jumped to her feet and began to run.

The assailant followed and caught her, again threatening her life. She again escaped his grasp and ran to three boys who were jogging in the park. She explained her plight to them and requested their aid. The boys started toward the assailant who had again thrust his hand into his coat pocket. He warned them to stay away from him or he would shoot, then turned and fled. The boys determined not to attempt to apprehend him but to follow him. They ran behind him through and out

of the park but lost sight of him when he turned into Drexel Avenue, a dead end street.

Sergeant Alvin Davis and Officer John Migas arrived at the scene, having been previously informed by an unidentified woman that there were two girls in the park crying for help. They there encountered the prosecutrix.

When the prosecutrix jumped to her feet and ran from her assailant her companion also ran, but in the opposite direction, eventually arriving at a Chicago Transit Authority depot. She there engaged in a conversation with an unidentified person who phoned the police. Officer Lawrence Watson responded to the call and upon arriving at the depot he observed the girl who was crying and out of breath. He engaged in a short conversation with her and then returned to the park where she had left the offender.

Meanwhile the three boys who had followed the attacker returned to the park. They, along with the prosecutrix and the officers, then engaged in a search of the area in the officers' car. The search consumed approximately fifteen minutes. Thereafter they returned to the vicinity of the park to which the offender had directed the girls and there observed a man who appeared to be looking for something on the ground. The prosecutrix and the boys identified him as the assailant, although at this time he was wearing a sleeveless denim jacket, a baseball cap with yellow tinted glasses perched on the bill, and tennis shoes. That man, the defendant, was then placed in custody.

When the prosecutrix' companion returned to the park with Officer Watson the defendant was already in custody. At trial each of the boys as well as prosecutrix and her companion again identified defendant as the offender.

Following the transportation of defendant to the Washington Park Police station, Sergeant Davis returned to the scene of the arrest and conducted a search for a weapon. He found a set of keys and returned to the station with them. According to the testimony of Officer Davis, when defendant saw the keys he stated that they belonged to him, that he had been searching for them in the park, and that they fit his automobile which was parked in an alley between Drexel and Maryland Avenues at 54th Street. (This was the general area, one block, in which the boys lost sight of the offender.)

Officer Davis proceeded to the area where he observed a car in a dilapidated condition. Through a window he observed a pair of black shoes with silver buckles. Entering the car through a rear door which was unlocked and partially unlatched, he removed the shoes, noting that

they were wet and had particles of grass clinging to them. He then ascertained that one of the keys fit the ignition of the car.

The defense presented was one of alibi. The defendant, his mother and his employer each testified that he had worked until approximately 3:15 on the afternoon in question. Defendant and his mother also testified that she drove him from his place of employment at 64th and Cottage Grove Avenue to a phone booth at 52nd Street. After calling his wife from the phone booth, defendant walked to his mother's home at 5430 South Drexel Avenue, arriving there at approximately 3:45 P.M. His mother drove up about the same time, having completed a shopping trip, and they entered her apartment together. Defendant bathed, ate, and made a partial change of clothing. He then left to see a realtor about an apartment. He set the time of his departure from his mother's apartment at about 4:00 P.M. Prior to this time he had been wearing a blue uniform from the place of his employment.

On the way to the realtor's office he passed through Washington Park. He was playing with a dog as he went, and in so doing threw his keys. He was looking for those keys when arrested. He had owned a pair of shoes similar to State's exhibit 1, but had given them to his brother about two months prior to the date of the alleged offense because they did not fit him properly. The shoes could have been placed in the car by his brother on May 1, 1967, when his brother helped him move.

The defendant denied having worn clothing similar to that described as having been worn by the offender on June 13, 1967; having seen the prosecutrix or her companion prior to 4:00 P.M. on that date; having been shown a set of keys while at the Washington Park police station; having been at his car on the date of the offense; or having consented to the entry of his vehicle by any police officer. He was last at his car on June 11, 1967, and on that date the doors were locked.

In rebuttal the State, over defendant's objection, was allowed to call as witness two girls who testified that they had been with the defendant in the bushes of the park, each on different dates, prior to the date of the offense charged and subsequent to the time defendant had stated that he gave a pair of shoes to his brother. Each girl testified that defendant wore State's exhibit 1 when she was with him and that she did not know him.

Following an extensive review of the record, we have determined that the first point urged by defendant is not properly before us. In this court he contends that his motion to suppress State's exhibit 1, the shoes, was improperly denied since they were recovered from his car, knowledge of the existence and location of which was obtained by investigating

officers while he was in custody and in violation of his constitutional rights as outlined in *Miranda v. Arizona* (1966), 384 U.S. 436. He also urges that the officers who testified at the hearing on the motion to suppress testified falsely, which was tantamount to the State's knowing use of false evidence, a denial of due process.

Defendant did present a motion to suppress to the court below and a hearing on the motion was held. While the written motion was broadly and vaguely worded, referring generally to the guarantees of the Fourth and Fifth Amendments, the only grounds actually urged on the motion was that the shoes were the product of a search of defendant's vehicle which was neither made incident to a valid arrest nor authorized by warrant although there had been sufficient opportunity to procure one. The record reveals that the trial court, faced with the vaguely worded motion to suppress, repeatedly urged counsel for defendant to make specific the grounds upon which the contention that the evidence should be suppressed was based. Counsel responded at length, but at no time was the basis now urged for the suppression of the evidence given even passing mention. A reviewing court will not entertain allegations of error with respect to an evidentiary ruling of the trial court where the basis of the allegation urged on appeal was not presented to the trial court *People v. Sawyer* (1969), 42 Ill.2d 294, 251 N.E.2d 230; U.S. *cert. denied,* 396 U.S. 928.

Defendant bases the contention that he was denied due process in that the hearing on the motion to suppress was not fairly conducted on dissimilarities between the testimony of the officers who testified at the hearing on the motion and that of another officer who testified only at trial. He contends that the testimony of the additional officer who testified at trial was inherently more believable and that the trial court erred in not reversing his previous ruling on the motion to suppress. The trial court, sitting with a jury, owed defendant no duty to determine the credibility of the witnesses and raise again, on its own motion, the question of whether State's exhibit 1 should have been suppressed.

We also note that while defendant asserts on appeal that discovery of the shoes was founded upon in custody questioning in violation of *Miranda,* precipitated by defendant's having identified the keys found in the park by Sergeant Davis, at trial defendant denied having been shown those keys.

■■■ Defendant also contends that it was error to allow into evidence the rebuttal testimony produced by the State, as it constitutes evidence of separate unrelated crimes attributed to the defendant. We do not agree. The testimony of the rebuttal witnesses was to the effect that they had been in the bushes in the park with defendant, that he was wearing

State's exhibit 1 at the time, and that they did not know him. This does not constitute evidence of any offense defined in the criminal code. Further, even if we were to assume that this testimony could support an inference that criminal activity were involved on those occasions, it does not follow that the admission of the testimony was error. The evidence produced at trial linking defendant to the offense was identification of his person and his possession of shoes described to have been worn by the offender. There can be no question that the identity of the defendant as the offender was at issue. Evidence which tends to prove a fact in issue is admissible even though it discloses that the defendant committed another crime, and evidence which establishes motive, intent, identity, accident or absence of mistake is admissible even though it may involve proof of a separate offense. (*People v. Harvey* (1957), 12 Ill.2d 88, 91, 145 N.E.2d 88.) Moreover, defendant himself had testified that he had not worn the shoes in question for a long period of time and had, in fact, given them to his brother some two months prior to June 13, 1967. The evidence presented on rebuttal constituted a direct contradiction of this testimony.

■■ Finally, we find defendant's contention that he was not proven guilty beyond a reasonable doubt to be without merit. Defendant has never questioned the sufficiency of the evidence with respect to the *corpus delicti*. Both prosecutrix and her companion identified defendant as the man who accosted them in the park at the time of his arrest and at trial. In addition, the boys who followed and then lost the assailant identified defendant at the same times. The boys also testified to having lost the assailant when he turned onto Drexel Avenue, a dead end street. Both defendant's mother's apartment and defendant's car, in which the shoes identified as those worn by the offender were found, were located in that area (one block). In view of this testimony we must conclude that the guilt of the defendant was overwhelmingly established. Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J., and GOLDBERG, J., concur.