THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACK PRICE, Defendant-Appellant.

(No. 72-14; ▮▮▮▮▮▮▮▮▮▮

Second District—November 8, 1972.

Donald M. Reno, Jr., of Champaign, and Alan G. Sumberg, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (James W. Jerz, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant was convicted of obscenity under Section 11—20(a)(1) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, sec. 11—20(a)(1)), and fined $1,000.

On June 29, 1971, the State filed a petition seeking a rule upon the defendant to show cause why the showing of the film, "Daughters of Anomaly," did not constitute probable cause for the offense of obscenity. An attached affidavit alleged that defendant was the manager of the Park Art Cinema; that on June 25, 1971, the affiant viewed the film; that in his opinion, the movie was obscene as defined by statute.

On July 9, 1971, after finding probable cause, the trial court ordered the film impounded until a trial on the merits. Thereafter, a complaint and amendment thereto were filed charging defendant with the offense of obscenity.

After viewing the film and hearing witnesses, the trial judge found the film "an out and out portrayal of sex," "hard core pornography," with dialogue used in "a veiled attempt to give the film literary value" and ruled the film to be obscene.

Defendant raises several issues on appeal. Two issues are identical to those which defendant's counsel argued before the Illinois Supreme Court in the recent case of *People v. Ridens*, 51 Ill.2d 410 (1972): (1) that *Redrup v. New York*, 386 U.S. 767, 18 L.Ed.2d 515, 87 S.Ct. 1414 (1967), expressed three elements necessary to the definition of obscenity in addition to those already set forth in *Roth v. United States*, 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957), and (2) that Ill. Rev. Stat. 1969, ch. 38, sec. 11—20 is unconstitutional.[1] The Illinois Supreme Court found

---

[1] Counsel, during oral argument, candidly admitted that *Ridens* summarily disposed of these issues in a manner adverse to defendant's interest.

no validity to these arguments and we adhere to their disposition.

At trial, the State presented four witnesses and introduced the film into evidence. The prosecution then rested its case-in-chief. Thereupon, defendant presented a motion for a directed judgment alleging, in part, that the prosecution did not establish a *prima facie* case because none of the witnesses testified that the film statisfied the three elements necessary for an obscenity conviction as set forth in *A Book v. Attorney General,* 383 U.S. 413, 418, 16 L.Ed.2d 1, 6, 86 S.Ct. 975 (1966). Those elements are, "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters and (c) the material is utterly without redeeming social value." After the luncheon recess, the prosecutor made a motion for leave to reopen the State's case-in-chief for the purpose of presenting testimony that the film violated the tripartite test. The motion was granted and the defendant now asserts that this was error.

■■ It is within the trial court's discretion to permit a case to be reopened in order to receive additional evidence. Such decision will not be upset unless there has been an abuse of that discretion. (*People v. Cross,* 40 Ill.2d 85, 90 (1968); *People v. Rose,* 124 Ill.App.2d 447, 452 (1970).) Defendant contends that this rule applies only in cases wherein the prosecutor has inadvertently omitted certain mere formalities of proof. (See, *People v. Cross, supra.*) Contrary to this contention, the prosecution has been allowed to reopen its case not only for the purpose of proving formalities but also to establish the very facts essential for a conviction. (In *People v. Parker,* 98 Ill.App.2d 146, 150 (1968), the State was allowed to reopen its case in order to prove the value of stolen merchandise in a theft prosecution.)

■■ Even without the additional testimony, the State had presented a *prima facie* case. In *People v. Ridens, supra,* at page 415-416, the Court held that the State met its burden of proof by introducing the allegedly obscene materials into evidence.

This court has viewed "Daughters of Anomaly" and must consider it in light of the *Ridens* decision. There, the Court held that certain magazines were obscene as a matter of law and described the magazines, saying:

> "* * * The color photographs, of which these magazines are almost exclusively composed, portray nude males and females, engaged in seductive embraces, posed with their legs spread so as to focus attention on their genitals. Although none of the models portrayed is actually engaged in sexual activity, it is clear from some sequences of photographs that sexual activity is suggested and imminent * * *." (51 Ill.2d 410, 417)

██ . There is no doubt that the movie before us much more explicitly portrays sexual acts than the magazines in *Ridens*.[2] There, sexual activity was suggested and imminent, while the instant film graphically shows actors engaged in sexual intercourse, masturbation, lesbianism, fellatio and cunnilingus.

The film is not distinguishable from the magazines reviewed in *Ridens* on the basis that it contains the additional elements of dialogue and narrative, a plot, theme or message. We agree with the trial judge's finding that the narrative frequently has little or no relation to that which the viewer observes; that it is inane and merely a ploy to camouflage the explicit sexuality of the film.

Based upon *Ridens*, we find the film obscene as a matter of law. So finding, we need not reach the other alleged errors raised by the defendant, and affirm the judgment of the lower court.

Judgment affirmed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.

---

[2] In oral argument, defense counsel, who viewed the *Ridens* magazines, conceded that "those publications were less explicit in their sexual material and in their candor."