THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KNOXELL DeBOISE, Defendant-Appellant.

Fifth District No. 74-270

Opinion filed January 19, 1976.

G. J. MORAN, J., dissenting.

Paul Bradley and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Bruce D. Irish and Myra J. Brown, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Knoxell DeBoise, from a judgment of conviction entered by the circuit court of St. Clair County on a jury verdict of guilty to the charge of murder and the sentence of 40 to 90 years imposed thereunder.

On appeal the defendant raises the following contentions: (1) that "the trial court erred in denying defendant's motions to suppress evidence"; (2) that the trial court erred in permitting the State to reopen its case; and (3) that the defendant's sentence of 40 to 90 years in the penitentiary was excessive. We find that the defendant has waived his first contention.

Prior to defendant's first trial, he filed three motions to suppress. The first motion, encaptioned "Motion to Suppress Identification," alleged that the identification procedures employed by the police were "suggestive and unfair." The second motion, encaptioned "Motion to Suppress Confession," alleged that the defendant's confession was not voluntary and that the defendant was denied his fifth amendment rights as required by the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602. The third motion, encaptioned "Motion to Suppress Evidence Illegally Seized," alleged that the defendant was arrested without a warrant and without probable cause and that as a result of this illegal arrest the "defendant was prevailed upon to give statements" in violation of his rights under the fourth amendment. A hearing was conducted on the defendant's motion to suppress confession. There was only one witness called to testify at this hearing, Detective Robert Henry. He testified that the defendant was advised of the *Miranda* warnings, that the defendant stated that he understood these warnings, and that no threats or promises were made to the defendant. At the conclusion of this hearing the trial court pronounced that,

> "[The] Motion of the defendant, Knoxell DeBoise, to Suppress the Confession is denied. The Motion to Suppress the Identification will be continued."

An order to the same effect was entered the same day. Neither the pronouncement nor the order made any reference to the defendant's motion to suppress evidence illegally seized. While the record reflects

that "Motions [were] heard" prior to the selection of jurors for defendant's first trial, it does not indicate either the nature or the disposition of such motions.

After the defendant's first trial ended in a mistrial, a second trial was held which ended in a jury verdict of guilty. No new motions to suppress were filed by the defendant; nor were any of the defendant's previous motions renewed. Prior to the second trial the trial court made the following inquiry: "Gentlemen, are there any Motions to be made before we proceed?" In response to this inquiry the defense counsel stated that there was a motion for a change of venue. After this motion was argued and denied, the defense counsel stated, "I believe that is the only Motion, your Honor." During the trial the State offered into evidence a statement the police had taken from the defendant. At this time the defense counsel made the following statement,

> "Your Honor, there has been a pre-trial Motion heard already and objections to it. I don't want to cross examine the man at this time. I won't object to it based on the prior rulings of the Court as long as it is understood that we don't waive any objections presented at the pre-trial Motion."

After the trial court stated, "Let the record so show," it stated,

> "I will show formally that People's Exhibit Number 6 is offered and accepted into evidence. Show that the record indicates that the defendant has not waived any statements or arguments previously presented as to the offering of this particular exhibit."

People's Exhibit 6 was the inculpatory statement made by defendant in which he stated that he was walking the street armed looking for someone to rob and that the decedent was shot accidentally by defendant's father's gun, which after the incident defendant returned to a file cabinet in which it was kept. Subsequently, the jury returned a verdict of guilty and the defendant filed a post-trial motion requesting a new trial, or in the alternative, a judgment notwithstanding the verdict. This post-trial motion was devoid of any reference to any of the defendant's motions to suppress. The only substantive issue raised therein, other than the State's failure to sustain its burden of proof, was that the trial court erred "in allowing the State to re-open its case."

■■ As a general rule,

> "Where the grounds for a new trial are stated in writing, the accused is limited on review to the errors alleged therein and all other errors are deemed to have been waived." (*People v. Hairston*, 46 Ill.2d 348, 367, 263 N.E.2d 840, 851, *cert. denied*, 402 U.S. 972, 29 L.Ed.2d 136, 91 S.Ct. 1658.)

(See also *People v. Pickett*, 54 Ill.2d 280, 296 N.E.2d 856; *People v. Hut-*

*son,* 13 Ill.App.3d 775, 300 N.E.2d 305; *People v. Norris,* 8 Ill.App.3d 931, 291 N.E.2d 184. Furthermore, where, as in the instant case, the defendant urges a basis for suppression on appeal which was not urged in the trial court, such basis will not be entertained by a court of review. (*People v. Sawyer,* 42 Ill.2d 294, 251 N.E.2d 230, *cert. denied,* 396 U.S. 928, 24 L.Ed. 2d 225, 90 S.Ct. 262; *People v. Fentress,* 133 Ill.App.2d 38, 272 N.E.2d 801.) While the defendant filed a motion to suppress illegally seized evidence before his first trial, which could have formed the basis for the contention now raised on appeal, he allowed this motion to remain unheard by the trial court. This motion was not renewed before the defendant's second trial. Consequently, the trial court did not consider the contention the defendant now raises on appeal. Under such circumstances the defendant has the burden to request a hearing on his motion and his failure to take any affirmative action on this motion places him in no position to assign error on appeal. See *People v. Kostos,* 21 Ill.2d 496, 173 N.E.2d 469.

■■■ Under the facts of this case, we do not find that fundamental fairness (Supreme Court Rule 615(a), Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)) requires that we relax the waiver rule in the instant case. Although we believe that the defendant may be able to demonstrate a technical violation of his constitutional rights, we do not believe that the alleged police misconduct enabled the police to obtain any evidence that would not have been obtained in the absence of the alleged violation. In other words, the evidence the defendant seeks to suppress was not obtained by *exploitation* of the alleged illegality of his arrest. The exclusionary rules are designed to deter the lawless action of police. (*United States v. Calandra,* 414 U.S. 338, 38 L.Ed.2d 561, 94 S.Ct. 613; *Linkletter v. Walker,* 381 U.S. 618, 14 L.Ed.2d 601, 85 S.Ct. 1731; *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684. As stated by the Supreme Court in *Brown v. Illinois,* 422 U.S. 590, 599-600, 45 L.Ed.2d 416, 425, 95 S.Ct. 2254, 2260:

"'The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guarantee in the only effectively available way—by removing the incentive to disregard it.' Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960). But '[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.' United States v. Calandra, 414 U.S. at 348, 94 S.Ct. at 620. See also Michigan v. Tucker, 417 U.S. 433, 446-447, 94 S.Ct. 2357, 2360, 41 L.Ed.2d 182 (1974)."

■■ Next, the defendant argues that the trial court erred in permitting

the State to reopen its case with testimony of defendant's parole officer that the defendant made a second statement to a parole officer similar to that which the defendant allegedly gave the police. The following sequence of events forms the basis for this argument. During the trial defendant testified on his own behalf. The defendant testified that he attended a dance the night in question. He further testified that he did not leave the dance from the time he entered the dance hall at 7:30 p.m. until he left to go home sometime after twelve. Two weeks after this incident the defendant's sister told him that the police were looking for him on an unrelated murder charge. The defendant's father told him to go down to the police station and "see what it was all about." After flagging down a police car the defendant was taken to the police station. The defendant then testified that he was threatened by the police. He also testified that he did not relate to the police any of the statements attributed to him in the "Statement," *i.e.*, confession, introduced into evidence by the State. The defendant testified that one of the detectives said he would make the murder look like an accident if the defendant would confess. The defendant recalled that he did not sign the statement until after he had been hit by the police. On cross-examination the defendant claimed that the police made up the statement, including the portion that stated that he had no intention of hurting the victim and that it was purely accidental. The defendant also testified that he was on parole at the time of the alleged murder. He further testified that his parole officer was (Henry) Morriseau. The defendant stated that he had requested to see his parole officer, but he was denied an opportunity to talk to him. After rebuttal testimony the State rested, and instructional conference was held. On the day following the instructional conference, the State's Attorney advised the trial court that the defendant's parole officer had come to his office the preceding afternoon. The State's Attorney told the trial court that he had never seen Morriseau before, and that,

"He [Morriseau] advised me that he had learned of the defendant's testimony through deputy sheriffs at the St. Clair County Jail when he was there visiting other inmates on unrelated matters. He advised me that statements attributed to him by the defendant were not true, specifically with respect to him being deprive[d] of the right to see his parolee, the defendant, at the East St. Louis Police Station, and with respect to defendant's testimony that he, Morriseau, had told the defendant at the County Jail that he had not been permitted to see him and that the police had advised Morriseau there was nothing he could do for the defendant."

The State's Attorney then related to the trial court the version of the incident the defendant had allegedly told his parole officer. After stating

that the State had never heard about this statement and advising the trial court that Morriseau submitted a report of his "investigation" solely to the Parole and Pardon Board, the State's Attorney moved to be allowed to reopen its case "for presentation of rebuttal evidence." Thereafter arguments were heard on the State's motion. The motion was granted and the defendant was granted a 30-minute recess to interview Morriseau. On direct examination Morriseau substantiated the statements the State's Attorney had made to the trial court. The witness also related that the defendant "[had] told me that he had taken the weapon from his father's home, and he had approached a truck that a driver was getting out of. He had the weapon in his hand, and his intent was to rob the man of his money; and he told me that he didn't even have his finger on the trigger, but rather had the hammer of the weapon back a little bit. He got nervous when the door opened or something of that nature, and the hammer caused the weapon to discharge; and he got scared to death and he ran at that time." No objection was raised to the introduction of the above quoted testimony. We do note, however, that immediately preceding this testimony the defense requested that the trial court renew the objections he had voiced *in camera.* These objections were limited to: (1) the fact that the evidence was cumulative; (2) an alleged confidential relationship between parole officer and parolee; (3) the inability to challenge statements by pretrial motion; and (4) the failure of the State to exercise due diligence in finding out that the defendant had made statements to his parole officer. The trial court granted the defendants' request to continue the above stated objections. While the defense counsel subsequently made several other objections, the record contains no objection to any testimony on the basis that such testimony was beyond the scope of rebuttal. After a brief cross-examination the witness was excused and the State rested. While no instruction was given limiting Morriseau's testimony to impeachment purposes, we note that prior to the reception of this testimony the trial court stated,

> "Gentlemen, after we conclude the testimony, I will hold an instruction conference so that you folks will have an opportunity to tender any further instruction if you feel that they are appropriate."

The record contains no indication that any further instructions were proffered by the defendant.

Section 114—10(c) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 114—10(c)), provides that,

> "No such confession shall be received in evidence which has not been furnished in compliance with subsection (a) of this Sec-

tion unless the court is satisfied that the prosecutor was unaware of the existence of such confession prior to trial and that he could not have become aware of such in the exercise of due diligence." Unlike *People v. Thompson*, 18 Ill.App.3d 613, 616, 310 N.E.2d 504, 507, wherein we found "no indication in the record  *  *  *  that the State's Attorney was unaware of the statement or could not have become aware of it in the exercise of due diligence," the instant case does contain a plausible explanation by the State's Attorney which the trial court found satisfied the requirement imposed by section 114—10(c) (Ill. Rev. Stat. 1973, ch. 38, par. 114—10(c)). On the record before us we can find no error in the trial court's action. Similarly, we find no abuse in the trial court's discretion in allowing the State to reopen its case for admission of rebuttal testimony (see *People v. Price*, 8 Ill.App.3d 158, 289 N.E.2d 280), since the rebuttal testimony had probative value for refuting the defendant's testimony (*People v. Daugherty*, 43 Ill.2d 251, 254, 253 N.E.2d 389; *People v. Brown*, 18 Ill.App.3d 1049, 310 N.E.2d 498, 502).

■■ Albeit we believe that it was error not to give the jury an instruction limiting the reception of Morriseau's testimony to impeachment and rebuttal purposes, the failure of the defendant to proffer such an instruction constituted a waiver of this error. (Ill. Rev. Stat. 1973, ch. 110A, par. 451(c); Ill. Rev. Stat. 1973, ch. 110, par. 67. See also *People v. Springs*, 51 Ill.2d 418, 425, 283 N.E.2d 225, *appeal dismissed*, 409 U.S. 908, 34 L.Ed.2d 169, 93 S.Ct. 252; *People v. Damen*, 28 Ill.2d 464, 469, 193 N.E.2d 25; *People v. Doss*, 26 Ill.App.3d 1, 324 N.E.2d 210.

■■ The sole remaining issue raised by the defendant is that his sentence of 40 to 90 years in the penitentiary was excessive. In the instant case the defendant was on parole from a sentence imposed on a burglary charge when he committed the offense of murder. He committed the murder during an attempted armed robbery. He had been walking the street armed with a handgun looking for an appropriate victim to rob. Under these circumstances we cannot say that the trial court abused its discretion in the sentence it imposed. See *People v. Van Gilder*, 26 Ill.App.3d 152, 324 N.E.2d 715.

For all of the foregoing reasons the judgment of the circuit court of St. Clair County and the sentence imposed thereunder is affirmed.

Judgment affirmed.

JONES, J., concurs.

G. J. MORAN, J., dissents.