*In re* J.B., a Minor (The People of the State of Illinois, Petitioner-Appellee, *v.* J.B., Respondent-Appellant).

Fifth District   No. 83—38

Opinion filed November 16, 1983.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.

John H. Ward, State's Attorney, of Taylorville (Stephen E. Norris and Mark A. LaRose, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Following an adjudicatory hearing in the circuit court of Christian County, respondent J.B. was adjudged delinquent and made a ward of the court for having committed the offenses of felony murder and burglary. After a subsequent dispositional hearing, the court vacated its finding of delinquency based on felony murder, and committed respondent to the juvenile division of the Department of Corrections based upon the finding as to burglary. Respondent appeals, arguing that he was denied effective assistance of counsel at the adjudicatory hearing. We affirm.

At an adjudicatory hearing held on November 29, 1982, Christian County sheriff's department investigator George Wise testified that he spoke with respondent on October 21, 1982, in the presence of other witnesses. After being read his *Miranda* rights by Wise, respondent admitted that he had killed Gaylord Long on Thanksgiving

Day in 1981. The oral statements made by respondent to Wise were reduced to writing, and respondent's signed confession was introduced into evidence without objection. In that confession, respondent stated that he was worried about having had spent money which he had been saving to buy his family an Atari game for Christmas. As a consequence of this concern, respondent decided to enter the home of a 90-year-old neighbor, Gaylord Long, in order to look for money. In the early morning hours of November 26, 1981, respondent used bolt cutters and a pellet gun to gain access to Long's residence. Respondent entered Long's bedroom and took $14 from a wallet lying on a dresser. Before respondent could leave, Long woke up. Respondent hid while Long searched the house; eventually, however, Long saw respondent in the kitchen. Long grabbed respondent and a struggle ensued. Respondent freed himself from Long's grasp and went into the living room, where he pulled out a knife that he was carrying. Long found respondent's pellet gun, picked it up, and pointed it at respondent. After Long laughed and told respondent that he was in "big trouble," respondent flipped up a telephone stand, jumped Long and stabbed him "a couple of times." Long then hit respondent over the head with the gun, causing a cut. The struggle continued until respondent reached around and stabbed Long in the back, at which time Long fell. Respondent then wiped the blood off of his knife and hands, retrieved the gun and bolt cutters, and went home.

Following admission of respondent's confession into evidence, Wise testified that he received a pair of bolt cutters, a pellet rifle, and a knife pertaining to the case. These items were subsequently taken to the State crime laboratory. Wise testified that he received reports relating to these items from the crime laboratory. These reports were admitted into evidence without objection, and they revealed that human blood was found on the blade of the pocket knife.

Neither counsel for respondent nor the attorney representing respondent's parents cross-examined Wise. Following Wise's testimony, the State rested. The defense offered no evidence or argument. After a brief recess, the court pointed out that the evidence offered by the State did not show that the victim had died, and that respondent had not been identified as the person who had confessed to the crimes. The State was then allowed to reopen its case without objection from the defense. Wise was recalled to the stand, and identified respondent as the individual who confessed to the crimes. Without objection from the defense, Wise testified that the pathologist's report indicated that Mr. Long had died sometime between 1 a.m. and 4 a.m. on the date of the incident, and that the pathologist had told Wise that the time

of death was most likely between 1 a.m. and 2:30 a.m. Following this additional testimony, the pathologist's report, which indicated that Mr. Long had died as a result of stab wounds, was admitted into evidence without objection. The parties agreed that respondent was 14 years of age. The court then found that the minor had committed the offenses of felony murder and burglary. A written order adjudging the minor to be delinquent and a ward of the court was entered on December 1, 1982.

A dispositional hearing was held on December 17, 1982. At that hearing, a court appointed psychiatrist testified that his examination of respondent revealed few signs that respondent would be likely to commit acts of violence in the future. The respondent offered the testimony of over 20 witnesses, all of whom were either related to respondent or had contact with him in some manner. Among the witnesses were respondent's paternal grandparents, who offered to let respondent live with them in Florida. Respondent also testified in his own behalf. Additionally, the testimony of the 19 witnesses who had testified on respondent's behalf at a detention hearing held on December 1, 1982, was incorporated into the dispositional hearing.

Following the presentation of the evidence at the dispositional hearing, the court amended its order of December 1, 1982, by deleting the adjudication of delinquency based on felony murder. The court ordered that the minor be committed to the juvenile division of the Department of Corrections based upon the adjudication of delinquency for having committed burglary. In making this determination, the court considered the death of Mr. Long as an aggravating factor associated with the burglary.

On appeal, respondent argues that he was denied the effective assistance of counsel at the adjudicatory hearing. Respondent points out that defense counsel did not make opening or closing arguments, did not cross-examine George Wise, did not object to the admission of respondent's confession and other evidence, and did not object to the State's request to reopen its case. While we agree with respondent's characterization of counsel's roll as "quiescent," we do not agree that such quiescence amounted to ineffective assistance of counsel under the facts presented here.

A defendant in a criminal case is entitled to a new trial if trial counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the defendant without which the result of the trial would probably have been different. (*People v. Scott* (1981), 94 Ill. App. 3d 159, 163, 418 N.E.2d 805, 807.) In the instant case, we

cannot say that trial counsel's inaction worked to bring about a result which would not otherwise have occurred. It is relevant to the question of effectiveness of counsel that the evidence so overwhelmingly points to the guilt of the accused that there could be little effective defense. (*People v. Neeley* (1980), 90 Ill. App. 3d 76, 79, 412 N.E.2d 1010, 1013.) Such was the case here, where respondent completely confessed to the crimes, there was nothing to suggest that his confession was unlawfully obtained, and no meaningful defense to the charges was available. Under these circumstances, respondent was not prejudiced by counsel's failure to make opening and closing arguments, as it cannot be said such arguments could have brought about a different result. Nor can the failure of counsel to object to the admission of respondent's confession be said to exhibit incompetence, since counsel is not required to make losing objections in order to provide effective representation. (*People v. Lewis* (1981), 88 Ill. 2d 129, 156, 430 N.E.2d 1346, 1359.) There is no showing that respondent was prejudiced by his counsel's failure to cross-examine George Wise, as there is nothing to suggest that Wise's testimony was false, inconsistent, or otherwise subject to significant impeachment. Finally, a court may, in its discretion, allow the State to reopen its case not only for the purpose of proving formalities but also to establish the very facts necessary for a conviction. (*People v. Price* (1972), 8 Ill. App. 3d 158, 160, 289 N.E.2d 280, 282.) Here, in light of respondent's full confession to the crimes, it is most unlikely that a defense objection would have persuaded the court not to allow the State to reopen its case for purposes of identification of respondent and establishment of *corpus delecti*. We note parenthetically that respondent was not prejudiced by' Wise's reading of the pathologist's report to establish the cause of Long's death, as the court ultimately vacated its finding of delinquency based on felony murder, and indicated at the dispositional hearing that it would have committed respondent to the Department of Corrections even if Long had died of natural causes during the burglary.

■ *People v. Coss* (1977), 45 Ill. App. 3d 539, 359 N.E.2d 1172, the case relied on by respondent, is distinguishable. In *Coss*, defense counsel moved to dismiss a petition to revoke his client's probation, and the court denied the motion. Counsel then refused to participate in the evidentiary hearing under the mistaken belief that such participation would waive the constitutional issues raised in the motion to dismiss. The appellate court reversed the revocation of defendant's probation and remanded for a new hearing, stating that "counsel's only strategy consideration was based on an ignorance of a fundamen-

tal rule of law." (45 Ill. App. 3d 539, 543.) Here, unlike in *Coss*, there is no showing that counsel made any decision based upon a misconception of the law, and we will not presume that such was the case. (See *People v. Seaman* (1977), 53 Ill. App. 3d 755, 758-59, 368 N.E.2d 1124, 1126.) Moreover, the vigorous representation afforded respondent at the detention and dispositional hearings dispels any notion that counsel had either abandoned respondent or was guilty of professional inattention to the case.

For the foregoing reasons, the judgment of the circuit court of Christian County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.