THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEVEN MANNING, Defendant-Appellant.

Third District No. 3—88—0344

Opinion filed July 6, 1989.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Gary L. Peterlin, State's Attorney, of Ottawa (David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Defendant was charged by indictment with residential burglary and attempted criminal sexual assault. Following a jury trial, he was convicted and sentenced to concurrent terms of imprisonment of four years. No questions are raised on the indictment.

The charges against defendant essentially alleged that, on June 14, 1987, he unlawfully entered the home of Lori King (Lori) with the intent to commit the offense of criminal sexual assault, and that once inside he performed a substantial step toward committing the offense in that he entered Lori's bedroom and by the use of force fondled her and unzipped his pants.

It is undisputed that defendant was in Lori's home without authority at the time in question. At issue, however, was whether defendant had the requisite intent to commit the charged offenses. Lori's testimony, her pretrial statement to the police, and defendant's testimony provided the bulk of the evidence presented at trial.

Lori testified that on June 13, 1987, she went to bed at approximately 11:30 p.m. wearing a T-shirt and underwear. She had one daughter and both slept in separate upstairs bedrooms. Lori's husband, Don King, was not at home because they had separated a few days earlier. Lori stated she was awakened in the early morning when a man put his hand over her mouth, while holding her down onto her bed. The man told her, if she screamed or tried to look at him, he was going to hurt her. Lori stopped struggling and told the intruder not to hurt her. The man then told Lori he was drunk and needed someone to comfort him and make love with, because he and his wife had separated. The man fondled her breasts and vagina, and put his hand back over her mouth when she started to struggle. After Lori told the man that she had been raped before, he stopped fondling her and they talked for about 20 minutes.

Lori stated the man eventually began to fondle her again and he unzipped his pants. A short time thereafter, Lori's daughter walked into the room. The intruder identified the young girl by name and Lori asked how the man knew her daughter's name. He replied that he always saw them walking. The daughter then got into bed with

them. Lori also stated that the man told her he knew her husband would not be coming home because they were separated. Apparently, some more conversation then took place, and the man promised the young girl that he would buy her a swing set and a swimming pool.

Lori further stated the man was talking to her as if he wanted her for a girl friend and told her he was unable to just walk up to her and start kissing her. He stated he knew what he was doing was not the way to have her and apologized. He then said he was going to trust her and let her see him and it was then that Lori saw the man was the defendant. At this point, defendant had been in her room for about one hour.

Defendant said that he left Lori's house at around 5:10 a.m. He asked Lori if they could keep the incident between the two of them. Defendant called Lori a few times over the next several days and apologized.

After the defense rested, the State called Officer Eugene Lowery (Lowery) as a rebuttal witness. Lowery testified that he interviewed defendant, in June 1987, about the incident in question. After defendant waived his rights, he made a 17-minute tape-recorded statement. After Lowery identified the tape, the State moved to have it played for the jury as an admission. Defendant, however, objected to its use as substantive evidence because it was improper rebuttal. The court agreed with defense counsel and held that the tape could be used solely for impeachment purposes and then only if a proper foundation had been laid for each statement by way of confronting defendant with the statement. The State then questioned Lowery, over defendant's continuing objections, about defendant's pretrial statement.

At closing arguments, defense counsel objected to certain comments by the prosecutor, moved for a mistrial during the arguments and included a detailed post-trial motion concerning the prosecutor's comments. The jury was instructed on the charged crimes—attempt and residential burglary—as well as the lesser included offenses of unlawful restraint, criminal sexual abuse and criminal trespass.

The jury found defendant guilty of all charges. Sentence, however, was only imposed on the charged crimes of attempted criminal sexual assault and residential burglary.

 The issue defendant raises on appeal is whether the State's Attorney's misconduct during the evidentiary and argument phases of the trial denied defendant his right to a fair jury determination of his guilt or innocence. In particular, defendant argues two points: First, that the State's Attorney committed gross misconduct by elic-

iting testimony concerning defendant's pretrial statement under the guise of impeachment during rebuttal after the court refused to admit same as substantive evidence and then arguing the substantive value of the statement in closing argument; and second, the State's Attorney's closing argument was prejudicial in that he expressed his personal opinion, misstated the presumption of innocence, confused the jury by diverting their attention, continued improper argument after sustained objections, commented on the severity of sentences and argued that the victim deserved sympathy. We need not consider defendant's second point, however, because we reverse the jury verdict and remand the cause for a new trial based on the prosecution's misuse of the pretrial statement for impeachment purposes.

The prosecution made no attempt whatsoever to introduce the pretrial statement of defendant as substantive evidence in its case in chief, but first attempted to admit the statement on rebuttal. The trial court, however, ruled the tape inadmissible as substantive evidence but allowed the prosecution to use the tape for impeachment purposes to those questions where proper foundation had been laid. The State's Attorney, then, went through a question and answer procedure with Officer Lowery, wherein Lowery was asked if a particular question was posed to defendant and a particular response given. These questions and answers were read in their entirety and, therefore, in effect the pretrial statement, instead of being played to the jury, was read aloud by the State's Attorney to the jury. The reading of the questions and answers was not necessarily improper standing alone, but in order to do so for impeachment purposes, the prosecution must have first confronted defendant with the time, place and circumstances of each prior statement and allowed defendant to either admit or deny making said statement. (See *People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E. 2d 1289; *People v. Boulahanis* (1946), 394 Ill. 255, 68 N.E. 2d 467; *People v. Perri* (1942), 381 Ill. 244, 44 N.E. 2d 857.) Our thorough review of the record reveals the prosecution did not lay a proper foundation for the reading of the questions and answers to the jury for impeachment purposes. Although the defendant was asked a few general questions about what he told the police, on cross-examination, he was not confronted with the prior statement and given the opportunity to admit or deny making the allegedly inconsistent statement.

Additionally, prior statements used to impeach a witness must be materially inconsistent with and tend to discredit the witness's testimony. (*Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 479 N.E. 2d 1091; *People v. Hayes* (1975), 32 Ill. App. 3d 953, 337

N.E. 2d 280.) For the most part, the answers defendant gave in his pretrial statement were not materially inconsistent with his testimony at trial. Thus, the jury was in effect asked by the prosecution to question defendant's credibility regarding statements not necessarily inconsistent. Regardless of whether the jury determined the statements to be inconsistent, it was highly prejudicial to defendant to have the prosecution creating credibility questions without a proper basis for doing so.

To add insult to injury, the State's Attorney then argued the substantive value of the pretrial statement in closing argument. Specifically, the prosecutor stated he wanted the jury to "[c]onsider all of the things the police said," and that defendant "[w]as more generous when he talked to the police." Had the pretrial statements been admitted in the State's case in chief as substantive evidence, those remarks would not be objectionable, but considering the limited purpose for which the pretrial statements were admitted, the prosecution clearly asked the jury to consider the statements as defendant's true story and disregard what he said under oath.

The State raises the case of *People v. Ellis* (1976), 41 Ill. App. 3d 377, 354 N.E. 2d 369, for the proposition that when a prior inconsistent statement of a defendant amounts to an admission, it is admissible not only as impeachment, but also as substantive evidence of guilt regardless of whether it was admitted during the State's rebuttal. *Ellis*, however, is not on point for the following reasons: First, the *Ellis* court was apparently faced with a situation where the State had laid the proper foundation for impeaching the defendant with his prior inconsistent statements. Proper foundation for impeachment is lacking in this case; second, the prior statement in this case was not inconsistent, but merely reiteration of what the evidence already was. Therefore, the State was not properly using rebuttal as a means of contradicting or disproving defendant's testimony or other evidence. In *Ellis*, we can only assume that the State was presenting proper rebuttal evidence. As a further note, the *Ellis* decision is not uncontradicted. In *People v. DeBoise* (1976), 35 Ill. App. 3d 298, 341 N.E. 2d 483, the court suggested that such rebuttal evidence cannot be considered as substantive evidence.

■ We further find that although the trial court gave instructions regarding the use of the pretrial statement as evidence, we do not believe the instruction cured the prejudicial effect to defendant. Similarly, the error was not harmless beyond a reasonable doubt. *People v. Suane* (1987), 164 Ill. App. 3d 997, 518 N.E. 2d 458.

Accordingly, the judgment of the circuit court of La Salle County

and the sentence imposed thereon is reversed and this case is remanded to the circuit court for a new trial.

Reversed and remanded.

WOMBACHER, P.J., and BARRY, J., concur.