The People of the State of Illinois, Plaintiff-Appellee, *v.* Gregory Johnson *et al.*, Defendants-Appellants.

(No. 57454;

First District (1st Division)—July 2, 1973.

James J. Doherty, Public Defender, of Chicago, Robert M. Gray, Assistant Public Defender, of counsel,) for appellants.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Ronald Mendes and James E. Staruck, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendants pleaded not guilty to a charge of criminal trespass to a vehicle, in that, on October 27, 1971, they knowingly entered a certain Buick automobile without the consent of its owner, James Whaley. They waived jury trial, were found guilty and were sentenced to nine and six months, respectively, in the House of Correction.

On appeal, the defendants contend: (1) that the police officers did not have probable cause to pursue and arrest them; (2) that the evidence did not establish their guilt beyond a reasonable doubt; and (3) that the sentences imposed were excessive because, at the hearing in mitigation and aggravation, the State introduced, *inter alia,* evidence of one prior conviction each for possession of marijuana under a law since held unconstitutional. We conclude that these contentions are not well founded and that the convictions and sentences must stand.

Officer Zara testified that on October 27, 1971, at about 3:30 A.M., he and his partner were driving westbound on 16th Street, in Chicago, in response to a radio assignment. As they approached 3608 West Huron Street, Chicago, a green 1968 Buick passed them headed eastbound, and several persons in the doorway there said "There they go in that auto." Officer Zara made a "U" turn and chased the car, keeping it in view at all times. They curbed the car on North St. Louis Street, saw the two defendants get out of the car and walk north and stopped and arrested both men. They also observed that the ignition lock and trunk lock of the car had been pulled.

James Whaley testified that he was the owner of the 1968 Buick Electra involved on October 27, 1971; that he promptly reported it stolen; that he saw it at the police station after the police recovered it; that the ignition lock was messed up; and that he had not given either defendant permission to be in his car.

The defendants' version of the incident was quite different. Defendant Johnson testified that he and defendant Shanklin had been looking for work all day and arrived at the home of Johnson's grandmother at 1636 South Christiana Street, where they arrived about 10:00 P.M.; that they

took the bus to Homan Avenue where they got off at about 3:00 A.M. and started to walk to Shanklin's home at 36 North Menard; that some police stopped them first on Homan Avenue, but after standing and questioning them, let them proceed for several blocks and that they were then arrested at Chicago Avenue by different officers; that they told the police officers that they had not seen a green Buick; and that he has never seen the car in question.

Defendant Shanklin testified substantially the same as Johnson. He denied knowing anything about or ever seeing the 1968 green Buick involved.

After the court had found both defendants guilty, a hearing in mitigation and aggravation was held in which it was shown that defendant Johnson had the following prior convictions—April, 1970, petty theft, ten days in House of Correction; December, 1970, theft, one year probation, first two days in House of Correction; March, 1971, possession of marijuana, three years probation, first four months in House of Correction; June, 1971, armed robbery reduced to theft, six months in House of Correction. Defendant Shanklin—March, 1971, possession of marijuana, two years probation; June, 1971, 60 days in House of Correction. No objections were made to the introduction of these prior convictions.

The State's Attorney recommended one year in the House of Correction for defendant Johnson and nine months for Shanklin. The court sentenced them to nine months and six months, respectively, and these appeals followed.

We shall first consider the defendants' contention that the police officers did not have probable cause to pursue and arrest them. They contend, among other things, that the officers were not entitled to rely upon information given them by anonymous bystanders, whose reliability had not been established.

■■ In *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466, in affirming the conviction, our Supreme Court, at page 514, said:

> "They had a right to rely upon the partly hearsay information which they received from Miss Fritsch and Mrs. Considine (*Draper v. United States*, 358 U.S. 307, 311-12, 3 L.Ed.2d 327, 79 S.Ct. 329, 332), and the usual requirement of prior reliability which must be met when police act upon 'tips' from professional informers does not apply to information supplied by ordinary citizens. (*Draper; People v. Lewis*, 49 Cal. Rptr. 579, 582; George, Constitutional Limits on Evidence in Criminal Cases, 13.)"

In *People v. Hoffman*, 45 Ill.2d 221, 258 N.E.2d 326, in affirming the conviction, the same court, at page 226, said:

> "The officers here were justified in relying on the information

received from the woman and, the usual requirement of prior reliability which must be met when police act upon 'tips' from professional informers does not apply to information supplied by ordinary citizens. (See *People v. Hester.*)"

And more recently, in *People v. Frisco*, 4 Ill.App.3d 193, 280 N.E.2d 557, in affirming the conviction, this court, at page 195, said:

"In the instant case, however, the person who gave the police the information was a private citizen who apparently had no motive of personal gain in informing the police that a crime had been committed. The requirement of prior reliability which must be met when police act upon 'tips' from professional informers does not apply to information supplied by ordinary citizens. (*Draper v. U.S.*, 358 U.S. 307.) See also *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466, where the court said that the police had a right to rely upon partly hearsay information which they received from school employees, and also held that the doctrine of prior reliability did not apply to information received from ordinary citizens."

■■ Furthermore, the applicable statute gives an officer the power to arrest a person when "he has reasonable grounds to believe that a person is committing or has committed an offense." (Ill. Rev. Stat. 1971, ch. 38, par. 107—2(c).) Applying this, in affirming the conviction, our Supreme Court, in *People v. Jones*, 38 Ill.2d 427, 231 N.E.2d 580, at page 431, said:

"Defendant first claims that there was no probable cause for his arrest by Officer Wolf. The applicable statute provides that a peace officer may arrest a person when 'He has reasonable grounds to believe that the person is committing or has committed an offense.' (Ill. Rev. Stat. 1965, chap. 38, par. 107—2(c).) Although it is true that mere suspicion, common rumor or report do not afford probable cause for arrest (*People v. Pitts*, 26 Ill.2d 395), it has been consistently held that reasonable cause means something less than evidence which would result in a conviction. (*People v. Jones*, 31 Ill.2d 42.) Furthermore, it has been stated that the existence of reasonable cause which will justify an arrest without a warrant depends upon 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States*, 338 U.S. 160, 175, 93 L.Ed. 1879, 1890."

■■ And in *People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466, above cited, the court, at pages 513-514, said:

"We have said that 'reasonable cause' to make an arrest without first obtaining a warrant means something less than evidence

which would result in a conviction (*People v. Jones*, 38 Ill.2d 427, 431), and the absence of a warrant may justifiably be made to depend upon 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' (*Brinegar v. United States*, 338 U.S. 160, 175, 93 L.Ed. 1879, 69 S.Ct. 1302; *People v. Pitts*, 26 Ill.2d 395, 399.)"

■■ And, in affirming the conviction in *People v. Adams*, 8 Ill.App.3d 62, 289 N.E.2d 53, this court, at page 67, observed that:

"[T]he test of probable cause is whether a reasonable and prudent man in possession of the knowledge that has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction * * * that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act. (*People v. Macias*, 39 Ill.2d 208, 213, 234 N.E.2d 783.)"

■■ Additionally, the fact that a moving automobile, not a home or office, is involved tends to reduce somewhat the quantity of information which the officer needs to justify his actions. In *People v. Erb*, 128 Ill.App.2d 126, 261 N.E.2d 431, the Appellate Court for the Second District, in affirming the conviction, at page 133, took the occasion to say that:

"The courts, moreover, have long distinguished between an automobile and a home or office in terms of circumstances justifying a warrantless search. See Chambers v. Maroney, 399 U.S. 42, 26 L.Ed.2d 419, 426, 90 S.Ct. 1975, 1979 (1970), holding that 'automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize.' Here, the mobility of the car, the fact that the occupants have been alerted, and the danger that evidence may never be found again if a warrant must be obtained, support the reasonableness of the search of the car after the apparent traffic violation and the detection of the odor of marijuana."

■■ In our opinion, the standards above set forth are met in the case at bar. The arresting officer observed a green Buick going away from the scene, he was told by non-professional bystanders that "There they go in that auto," he made a "U" turn and pursued them, keeping them always in sight, after the car was curbed several blocks away, he saw the defendants exit the car and he and his partner arrested them and found that the ignition lock and the trunk lock had been pulled. We hold

that the arresting officer, under these circumstances, had probable cause to arrest them. To have done less would have been a dereliction of his duty.

Furthermore, even were the arrest unlawful, no "fruits" of their arrest were used to convict them.

Turning now to the defendants' second contention—that the State has not proved the elements of the offense beyond a reasonable doubt—we conclude that this point is without merit. The defendants were charged under Ill. Rev. Stat. 1971, ch. 38, par. 21—2, which reads:

> "Whoever knowingly and without authority enters any vehicle, aircraft or watercraft or any part thereof of another without his consent shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both."

■■■ In support of their contention, the defendants first assert that there was insufficient evidence to prove an entry into the vehicle in question, stating that; when they were apprehended on the street by the police, they were not out of breath, nor did they run. They contend that this was not the conduct of guilty men and that this behavior ought to demonstrate their innocence. Against these assertions, we have the testimony of Officer Zara, who stated unequivocally that he saw the defendants leave the car after they had pulled over to the curb and that they were never out of his sight until they were arrested by him. This is a question of fact which was properly determined by the trial judge, who decided to believe Officer Zara's version of the incident, and we will not disturb that finding, unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of guilt of the accused. (*People v. Vail*, 74 Ill.App.2d 308, 221 N.E.2d 165.) The defendants' assertions of innocence certainly did not do this, and we conclude the trial judge decided rightly on this question.

■■ As to the defendants' argument—that there was insufficient evidence to show the vehicle belonged "to another"—we find that the minimal discrepancy in the license number, (one digit was omitted) coupled with the correct make, color, and year of the vehicle, was more than sufficient to show ownership, and therefore the requisite elements of the offense have been proven.

This brings us to the defendants' third and last point—that the sentences imposed are excessive because, at the hearing in mitigation and aggravation, the State introduced, *inter alia,* evidence of one prior conviction each for possession of marijuana under a law since held unconstitutional.

■■ The defendants rely principally upon the Illinois Supreme Court's

opinion in *People v. Crews*, 38 Ill.2d 331, 231 N.E.2d 451. There the trial court, after a bench trial in which a woman was convicted of beating a 2-year-old child, who resided with her, to death after the child had turned on the hot water in the bathtub, took into consideration a case worker's report reflecting statements made by a four-and-one-half-year-old child as to the defendant's previous mistreatment of the victim, and sentenced the woman to death. The Supreme Court, in affirming the conviction but remanding for sentencing, at pages 337-339, said:

> "The statements of Jeffrey, if made and if true, portray horrifying mistreatment of Lisa on other occasions by the defendant. *It is plain that the trial judge was influenced by the report.* This misconduct was denied by the defendant.
>
>     \*    \*    \*
>
> Plainly, a judge with the solemn responsibility of determining the punishment of the convicted is to be encouraged to hear and consider all available and pertinent information concerning the person and the crime, so as to enable him to impose a punishment which is appropriate. However, before relying on such information the judge must determine its accuracy (see *People v. O'Neil*, 18 Ill.2d 461, 466; *People v. Serrielle*, 354 Ill. 182), and he must take care to shield his mind from what might be the prejudicial effect of unreliable and other improper evidence. (See *People v. Riley*, 376 Ill. 365, 369.) *If it is shown that the convicted has been prejudiced by the* procedure adopted, or *material considered by the trial court in conducting its inquiry prior to the imposition of punishment, the resultant penalty will not be allowed to stand.* *People v. McWilliams*, 348 Ill. 333; see *People v. Riley*, 376 Ill. 364, 371, 372.
>
> Considerations governing the admissibility of a child's testimony during trial are applicable equally to a child's testimony in connection with the post-trial matter of sentencing. Generally, the trial court must conduct a preliminary in-person examination of a witness of doubtful competency, such as a child, to determine competency to testify. (*Shannon v. Swanson*, 208 Ill. 52; *People v. Enright*, 256 Ill. 221.)    \*    \*    \*
>
> Seven witnesses here gave testimony at the hearing in mitigation and aggravation, and all testified under oath. However the 4½-year-old child, Jeffrey, was not present at the hearing and so far as we can determine was never seen by the trial judge. The court had no opportunity to appraise his relative maturity or immaturity, his understanding or incapacity to understand the necessity that truth be told and to consider other qualities going to the

212

question whether reliance could properly be placed on what he said or might say. Also, neither the caseworker nor the temporary foster mother was called and they apparently were not known by the trial judge. We do not mean in making this observation to impugn their veracity but we deem that in orderly procedure they should have been called and counsel for the defendant given the opportunity for cross-examination. Particularly, Jeffrey should have been available for examination by counsel, as well as by the court and State's Attorney. As related, we said in *People v. Mann,* 27 Ill.2d 135, that *the trial court may search within reasonable bounds for facts in an inquiry relative to aggravation or mitigation. Here, the trial court's search passed such bounds and was improper."* (Emphasis ours.)

■■■ This is a far cry from the situation in the case at bar. Here the defendant Johnson had three previous convictions, other than the marijuana charge, and only got nine months in the House of Correction; and defendant Shanklin, with one previous conviction, other than the marijuana charge, got only six months. Obviously, the trial court was not influenced by the marijuana convictions and the sentences are not in any way excessive or harsh.

■■ In *People v. Smith,* 14 Ill.2d 95, 150 N.E.2d 815, where the defendant claimed that the sentence, after two previous convictions, was excessive because the trial court was not sufficiently impressed by his testimony on mitigation, our Supreme Court, at pages 97-98, said:

"Where it is contended that the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, this court should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is manifestly in excess of the proscription of section 11 of article II of the Illinois constitution which requires that all penalties shall be proportioned to the nature of the offense. *People v. Dixon,* 400 Ill. 449; *People v. Mundro,* 326 Ill. 324; *People v. Lloyd,* 304 Ill. 23; *People v. Elliott,* 272 Ill. 592.

\*    \*    \*

In view of his criminal record, a minimum sentence of twelve years is within both the limits of punishment set by law and the judicial discretion of the trial court. Defendant was afforded a fair hearing and full opportunity to show any circumstances in mitigation of the offense. We cannot say that his rights were in any manner prejudiced by the procedure adopted or that the

trial court abused its discretion in pronouncing the sentence and judgment."

■■ It should also be presumed that the trial court, on the hearing in mitigation and aggravation, disregarded any incompetent or immaterial evidence. In *People v. Robinson*, 116 Ill.App.2d 323, 253 N.E.2d 570, the defendant contended that the sentence was excessive because the court, on the hearing on mitigation and aggravation, had examined a probation officer's report containing references to the defendant's previous questioning by police, where no convictions had resulted. The court struck such references from the report and stated that it would not consider them. In affirming the sentence, the Appellate Court for the Fourth District, at pages 331-332, said:

"While matters concerning various arrests on which there was no finding of guilty should not be received in evidence at a hearing in aggravation and mitigation, as stated by the courts in People v. Drewniak, 105 Ill.App.2d 37, 245 N.E.2d 102 and People v. Bradford, 23 Ill.2d 30, 177 N.E.2d 139, *it is presumed, on a hearing in aggravation and mitigation, that the court will disregard any incompetent evidence when determining the degree of punishment.* No reversal or reduction of sentence is justified on the basis of the record relating to such matters in the cause before us. The trial court observed defendant during the trial and heard all of the witnesses and, therefore, was in a better position to determine the degree of punishment than is a court of review as has been stated by many courts of this State (People v. Taylor, 33 Ill.2d 417, 211 N.E.2d 673)." (Emphasis added.)

■■ It should also be noted that this point was in no way raised in the trial court and is therefore not properly before us. See:

*People v. Harris*, 33 Ill.2d 389, 211 N.E.2d 693; *People v. Moore*, 43 Ill.2d 102, 251 N.E.2d 181; *People v. Nilsson*, 44 Ill.2d 244, 255 N.E.2d 432; *People v. Burroughs*, 10 Ill.App.3d 477, 294 N.E.2d 325.

We therefore affirm the judgments of the circuit court.

Judgments affirmed.

GOLDBERG and EGAN, JJ., concur.