*In re* Mark C. Brewer *et al.*, Minors.

(No. 74-48;

Fifth District—November 22, 1974.

Dale A. Allison, Jr., State's Attorney, of Mt. Carmel, for the People.

Woodcock & Hux, of Mt. Carmel, for appellees.

Mr. JUSTICE CREBS delivered the opinion of the court:

This is an appeal by the State from an order of the Circuit Court of Wabash County granting a motion to suppress evidence and dismissing a petition for adjudication of wardship against 13 minor defendants. The petition alleged that the minors were delinquent in that on October 26, 1973, they were found to be in unlawful possession of more than 2.5 grams of cannabis. The question posed is whether their arrest and the search and seizure of evidence were unreasonable and in violation of their constitutional rights.

It appears that on the night in question the son of the Mayor of Mt. Carmel and a group of teen-age friends were in an upstairs room over the mayor's garage adjacent to his house which had been fixed up and used as a clubroom. At about 9:30 P.M. the police arrived and based on their observations all of the minors were arrested, taken to the station and charged. The events leading up to the arrest and search were recounted by a number of officers at the hearing on the motion to suppress.

Deputy Murphy testified that he was patrolling the neighborhood for possible vandalism. As he approached the alley behind the mayor's house he noticed a boy and a girl get out of a station wagon and start toward the garage, but when they saw him they returned to their car and left. Suspicious, he circled the block and came back. This time he saw four or five youngsters run into the garage. Thinking there might be some vandalism he immediately radioed for assistance and then stood in front of the open garage door until other officers arrived. He stated that he knew the mayor had three minor sons and that the youngsters he saw could have been members of the family. He admitted that he did not see any acts of vandalism and that he had no reasonable grounds to believe any crime had been committed.

Officer Lockhart testified that he and Officer Singer responded to Murphy's call. He stated that he thought if vandalism was taking place

it would probably be on the car, so they entered the garage and, using flashlights, they looked around. They found nothing out of line but when he heard some shuffling as if someone were walking on the floor upstairs he walked over to the stairway. Looking up he could see lights and he heard music. He then went on up the stairs and at the top he saw a bunch of youngsters sitting around a table. There was a haze of smoke and on the table were a number of beer cans. He asked Officer Singer to stand there while he went to the house to talk to the mayor. The mayor was not at home so he returned and proceeded to take the names and addresses of all the boys and girls. On cross-examination he stated that he knew the mayor had three teen-age sons and that they used the upstairs of the garage as a club house. In fact, he had been by there previously when the son here involved had had a party. He stated that no one had asked him into the garage or the club, he did not have an arrest or search warrant, he had no report of a crime being committed, and he did not see any crime nor any vandalism.

Officer Singer's testimony was substantially the same as Lockhart's. He too heard music from upstairs, and he followed Lockhart up the steps. He saw the smoke which smelled like cannabis to him, and while Lockhart was gone he looked around. He noticed some beer cans on the floor, a disassembled pipe, some straws cut in two with some substance in them and under the table he found some cellophane sandwich bags with some brown stuff and pills in them. On cross-examination he stated that he had investigated several vandalisms in the city before but the last one had been a month and a half ago. On this night he had seen no vandalism, he had no invitation to enter the premises, and he had no reason to suspect that a crime was being committed.

The chief of police testified that since it was near Halloween he had beefed up his patrols to protect against soaped windows and the breaking of light bulbs. He had previously assigned a couple of deputies to watch the mayor's house because of rumors of a possible fire bombing, but that had been for only 4 or 5 days the previous July. As far as vandalism was concerned the mayor had never reported any.

■■ The State does not dispute the fundamental rule that the lawfulness of a warrantless arrest and search is dependent upon whether the officers had reasonable or probable grounds to believe that a crime had been or was being committed and that the person to be arrested committed it. (*People v. Brown*, 38 Ill.2d 353; *People v. Henneman*, 373 Ill. 603.) From this rule and the facts involved the State argues, however, that the officers had a right to enter upon the private premises of the mayor because, having knowledge of the possibility of vandalism, they had a responsibility to investigate further and meet the challenging situation which

confronted them. (*People v. Jones*, 31 Ill.2d 240.) In addition, since the police must often act with a quick appraisal of the data before them, the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and catch criminals. *People v. Brown*, 38 Ill.2d 353; *People v. Watkins*, 19 Ill.2d 11.

Thus we have posed the frequently recurring question of what takes precedence, the interest of the public in the suppression of crime or the constitutional security of an individual against unreasonable search and seizure. The answer obviously depends upon whether the police under the circumstances of a given case acted reasonably, for though the suppression of all crime is to be desired, yet the very purpose of the constitutional guarantee was to place obstacles in the way of a too-permeating police surveillance, thereby subjecting a free people to an even greater danger than the escape of some criminals. *United States v. Di Re*, 332 U.S. 581, 92 L.Ed. 210, 68 S.Ct. 222.

■■■ The United States Supreme Court in *Henry v. United States*, 361 U.S. 98, 4 L.Ed.2d 134, 80 S.Ct. 168, stated that while a completely satisfactory and inflexible definition of what constitutes reasonable grounds is not possible to formulate, it is generally agreed that reasonable grounds, or probable cause, exists if the facts and circumstances known to the officer would warrant a prudent and cautious man in believing that the person arrested was guilty of an offense. Also, reasonable cause means something less than evidence which would result in a conviction (*People v. La Bostrie*, 14 Ill.2d 617), but mere suspicion, common rumor or report do not afford probable cause. (*People v. Pitts*, 26 Ill.2d 395.) Nor is the legality of a search to be determined by its results. *Johnson v. United States*, 333 U.S. 10, 92 L.Ed. 436, 68 S.Ct. 367.

■■ Applying these standards to the facts before us, we agree with the trial court that, given the circumstances faced by the officers here, there was no probable cause or reasonable grounds for the arrest, the search, or even the entry upon the mayor's premises. The State argues justification for the entry based upon the belief of the police that vandalism had or was about to occur. But the officers themselves testified specifically that they had no report of vandalism, did not see any vandalism, and had no reason to believe that any crime was being committed. One officer merely saw a boy and a girl get back in their car after they saw him, and then he observed four or five youngsters run into the garage. He knew the mayor had three minor sons and admitted that the youngsters he saw could have been members of the family. He then stood in front of the open garage door until his radio call for assistance was answered but he heard nothing suspicious or unusual in the meantime. The two officers who came also knew the mayor's family and were aware of the fact

that they used the upstairs of the garage as a clubroom, and one of the officers had even been by the garage personally when the son involved here had had a party in the clubroom. At this point there were no grounds whatsoever to enter the garage, but they did, and with flashlights determined that their suspicion of vandalism was wholly unfounded. Nonetheless and in spite of the fact that they heard music from upstairs, which was hardly a harbinger of crime, they proceeded to mount the stairs. It was only then that one of the officers saw smoke which he believed smelled like cannabis.

From these facts we can see no challenging situation confronting the officers, nor any reason whatsoever that might trigger a need for quick action to prevent a crime or catch a criminal. Rather, it would appear that they were motivated by curiosity more than anything else, and, as such, their invasion of private property was a patent violation of the constitutional rights of the mayor's son and his teen-age guests.

■■■ Pressing on, however, the State next argues that in any event the officers had a right to seize the evidence in question because it was in plain view. The plain-view doctrine is based on the theory that a warrantless search incident to a lawful arrest may generally extend to the area that is considered to be in possession or under control of the person arrested, and such items in plain view may be seized. (*United States v. Rabinowitz*, 339 U.S. 56, 94 L.Ed. 653, 70 S.Ct. 430.) But plain view, standing alone, is never enough to justify a warrantless search, for first the officer must be shown to have been lawfully on the premises (*People v. Eastin*, 8 Ill.App.3d 512) and not present only after an unlawful invasion of private property. (*People v. Smith*, 5 Ill.App.3d 341.) As stated in *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022, what the plain-view cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. Here we find, as above set forth, that the officers were not lawfully on the premises, and therefore the plain-view doctrine is not applicable.

We have also examined all of the other numerous cases cited by the State in support of its arguments, and we do not consider any of their factual situations comparable to the facts here involved.

Accordingly, judgment of the Circuit Court of Wabash County suppressing evidence and dismissing the petition for adjudication of wardship is affirmed.

Affirmed.

G. MORAN, P. J., and CARTER, J., concur.