THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FREDDIE MILLER, JR., Defendant-Appellant.

Fifth District No. 74-326

Opinion filed October 17, 1975.—Supplemental opinion filed upon denial of rehearing March 11, 1976.

Apoian, Ross & Funk, P. C., of East St. Louis (Haig Apoian, of counsel), for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

Defendant was indicted, tried before a jury and convicted of the crime of theft of property valued in excess of $150 in violation of section 16—1(a) of the Criminal Code (Ill. Rev. Stat., ch. 38, § 16—1(a)). The gist of the offense was that defendant had exerted unauthorized control over a 1973 International Loadstar truck, the property of another, with the intent to permanently deprive the owner of the use and benefit thereof. Defendant received a sentence of one to six years' imprisonment and brings this appeal. We affirm.

The issues defendant raises are limited to his motion to quash a People's search warrant and suppress all evidence resulting therefrom, and his motion to suppress all evidence gathered from a nonwarrant search of the vehicle named in the indictment. Those issues are: (1) whether the trial court committed reversible error in refusing to quash the search warrant and suppress all items seized thereunder because the search warrant failed to adequately particularize the items to be seized; (2) whether the trial court committed reversible error when it required defendant to stipulate to possession of the truck in order to acquire "standing" to make a motion to suppress; and (3) whether the trial court committed reversible error in failing to suppress evidence gathered from the non-warrant search of the truck in that the State failed to establish probable cause or the exigencies of the situation.

We cannot consider the second issue raised by defendant since it was raised for the first time in his brief in this appeal. It was not raised during the hearing on his motion to suppress, during the trial when the evidence yielded by the search was presented, or in his post trial motion. Accordingly, the issue is waived on appeal. *People v. Curry*, 56 Ill.2d 162, 306 N.E.2d 292; *People v. Cimino*, 45 Ill.2d 556, 257 N.E.2d 97.

The fourth amendment to the United States Constitution provides that no search warrant shall issue except those "particularly describing the * * * things to be seized." In interpreting this provision the Supreme

544

Court, in *Marron v. United States*, 275 U.S. 192, 196, 72 L.Ed. 231, 237, 48 S.Ct. 74, stated: "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible * * *. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Defendant here argues that the warrant is violative of his rights under the constitution and at wide variance with the requirements of the *Marron* case since the description of the articles to be seized in the search warrant are inadequate. The description in the warrant of the things to be seized was "stolen vehicles and vehicles or parts of vehicles with the manufacturers identifying numbers altered or removed; vehicle identification number plates commonly referred to as VIN plates; tools, die stamps, and cutting paraphernalia for use to dismantle, conceal, or steal motor vehicles; improper or open motor vehicle titles."

The complaint and affidavit upon which the warrant was issued indicated that police officers had inspected and impounded a truck which was displaying a license plate issued to another vehicle and upon which the manufacturer's identifying number had been ground off and restamped. The "owner" of the truck had purchased it from defendant who was doing business from a particularly described garage which was to be searched. Another truck, a 1972 Chevrolet, was parked in front of this same garage displaying a license plate issued to defendant for use on a 1969 Chevrolet truck.

The defendant contends that the descriptions of the property to be seized are entirely generic in matter and entirely lacking in specificity; the warrant did not describe the types, makes or models of the vehicles to be seized; the vehicles were not specified to be trucks, automobiles or even motor vehicles; and furthermore, the tools, die stamps and cutting paraphernalia used to dismantle, conceal or steal motor vehicles did not describe anything. Defendant relies on *People v. Prall*, 314 Ill. 518, 145 N.E. 610, in which the Supreme Court quashed a search warrant describing the property to be seized as "certain automobile tires and tubes." The court commented there was no effort to identify the tires and tubes in question by name, number, color, size or material. Defendant also cites *People v. Holmes*, 20 Ill.App.3d 167, 168, 312 N.E.2d 748, in which the search warrant described the property to be seized as "an undetermined amount of United States Currency and the weapon used in the armed robbery of the Kroger Food Store * * * in the City of Chicago Heights." The court held both identifications were inadequately particularized.

■■ We disagree with defendant's characterization of the description of the property contained in the warrant and do not take *Prall* and *Holmes*

as controlling. The vehicles to be seized were not *any* vehicles but stolen vehicles or parts of vehicles where the manufacturers' identifying numbers were altered or removed. The qualifying words limit the scope of the property to be seized and curtail the discretion of the officers executing the warrant. Moreover, the search was limited to a particular premises upon which the officers could reasonably believe a vehicle theft operation was being conducted. The description of vehicle identification number plates, the tools, die stamps and cutting paraphernalia for use to dismantle, conceal or steal motor vehicles was as particular as they could be under the circumstances and could not be described otherwise or with more particularity. It has been recognized that when property of a specified nature is to be seized rather than particular property then a description of its characteristics is sufficient. (See *People v. Curry.*) Such is the case here.

Defendant's final issue questions the trial court's refusal to suppress the evidence seized in a nonwarrant search of a truck—an incident unrelated to the search by warrant of the garage. The factual setting of the issue is as follows: Sergeant McEuen of the Wood River Police Department received a call from an informer in which he was advised that a stolen truck was being operated in the area of the American Oil Company. The truck was described by the informant as "* * * a red International dump truck, leased to the Southern Illinois Black Truckers, Inc. and that it had a white painted grill on it." Southern Illinois Black Truckers, Inc. was a company of defendant. Sergeant McEuen directed Officer Nunn to stop a possible stolen truck which was hauling sand near the American Oil Company. The initial stop of the truck occurred around 1:30 p.m. on August 15, 1973. Officer Nunn ran a vehicle identification check on the truck which indicated that it was not a stolen truck. The check was made by viewing the vehicle identification number (hereinafter VIN) which was stamped on a plate affixed to the door. Officer Nunn noted, however, that the VIN tag on the door was attached with sheet metal screws. No further search was conducted at that time and the VIN number was checked with the driver's permission. The driver, Collins, was permitted to go on his way, the only infraction being that he was operating the truck with an improper license classification, but no citation was issued. Officer Nunn then radioed the information to Sergeant McEuen. A short time later Sergeant McEuen again radioed Officer Nunn and advised him that he had checked with the State Police and there was another place on the truck which should be checked for a VIN number.

About 2:30 p.m. on the same day Officer Nunn again stopped the truck and proceeded to look underneath the hood for the additional VIN plate, with a negative result. Nunn then radioed for Sergeant McEuen who

arrived shortly on the scene. Upon McEuen's arrival he assisted Nunn in checking the truck for altered serial numbers on the frame of the truck, searching under the left front wheel. McEuen radioed the State Police for assistance in checking the truck for identification. Officer Mehrtens of the Illinois State Police arrived and checks were again made of the VIN plate on the door and numbers on the frame of the truck which Mehrtens testified had been altered with a welder. The engine number was also checked and Mehrtens testified that it too had been altered in a like manner. After it was determined that the truck had obliterated serial numbers, Collins was placed under arrest and later charged with possession of a vehicle with an altered or obliterated serial number but these charges were later dismissed.

Subsequent to the arrest of Collins the truck was impounded at the Wood River Police Station and a thorough nonwarrant search of the interior of the truck was conducted. A "line slot" or production sheet was discovered under the floor mat which enabled the police to later establish that the vehicle was stolen property.

■ With respect to the nonwarrant search of the truck defendant first argues that the evidence should be suppressed because the People failed to substantiate how the informer reached his conclusions, that the information supplied by the tip, standing alone, was not sufficient probable cause for the stop of the truck. He cites *People v. King*, 12 Ill.App.3d 355, 298 N.E.2d 715, as authority for his proposition, but that case is not germane since the informer there was a professional informer and, under the general rule, there must be a substantial, independent basis to support his credibility. (*Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509.) Here, however, the tip came from a person who had never before furnished information to the police and the usual requirement of prior reliability (the ordinary "substantial independent basis") which must be met when police act upon "tips" from professional informers does not apply to information supplied by ordinary citizens. (*People v. Hester*, 39 Ill.2d 489, 237 N.E.2d 466; *People v. Kaprelian*, 6 Ill.App.3d 1066, 286 N.E.2d 613.) Accordingly, Officer Nunn had probable cause for his initial stop of the truck for investigation.

Probable cause for the second stopping of the truck (which occurred approximately one hour after the initial stop) is found from the citizen's tip that authorized the initial stop, plus the irregular manner in which the VIN tag was affixed and the improper license possessed by the driver, factors which justified further investigation.

Since the initial stop and investigation of the truck was proper, the subsequent actions of the police officers were fully justified and did not constitute a violation of defendant's fourth amendment rights. We are

guided to this conclusion by the recent case of *People v. Wolf*, 60 Ill.2d 230, 326 N.E.2d 766. There, a police officer stopped an automobile for a traffic violation (only one headlight). After the stop the officer noticed the license plates of the automobile were fastened by wire. Seeking further identification the officer opened the door to inspect the VIN and detected the odor of burning marijuana. A further search of the auto was made and it divulged 16 bags of marijuana in the trunk. Defendant was arrested and tried for possession, and, as in this case, a motion to suppress was made. The court noted that in some jurisdictions the viewing of a VIN by opening the car door or lifting the hood is not a search within the meaning of the fourth amendment when there is a legitimate reason to check the identity of the automobile, or, that if such a check was to be considered a search, it was, considering the circumstances involved, a reasonable one and not violative of the fourth amendment. The court also noted that in some other jurisdictions opening the car door to examine the VIN is considered a search within the meaning of the fourth amendment. Declining to make a determination of the correctness of the two views, the court assumed, *arguendo*, that opening a door to examine a VIN is a search but concluded that under the circumstances present the search was not an unreasonable one. The check of the VIN was found to be legitimately required because the license plates were irregularly tied to the car by wire.

We find the circumstances of justification present here similar to those in *Wolf*. Upon stopping the truck, and examining the VIN number, the officer noted that the number plate was affixed to the door in an irregular manner with sheet metal screws. In the subsequent investigation of the serial number on the frame of the truck (which was observed by looking behind the front wheel, and without the necessity of scraping off mud or dirt) it was observed that the serial number of the truck had been obliterated and restamped by the use of hand tools. By lifting the hood of the truck it was determined that the engine number had also been altered. These alterations and irregularities indicated a strong likelihood that the truck had been stolen and there was probable cause to arrest the driver and take the truck to the police station for a further search.

■■ It was the thorough warrantless search of the truck at the police station that enabled the officers to finally establish that the truck had been stolen. Once probable cause has been found, a search such as that conducted in this case is not violative of defendant's fourth amendment rights. In *Chambers v. Maroney*, 399 U.S. 42, 26 L.Ed.2d 419, 90 S.Ct. 1975, the Supreme Court observed that its decisions had long distinguished between a warrantless search of a motor vehicle and a warrantless search of a house or an office. Citing *Carroll v. United States*, 267

U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280, the court noted that under circumstances which would not authorize a warrantless search of a house or office, an automobile, because of its mobility, may be searched without a warrant while it is on the highway if there is probable cause to believe that it contains materials that the officers are entitled to seize.

The case under consideration is factually similar to *Chambers* in that the vehicle in question in each case was searched after it had been taken to the police station. Similar also are *People v. Canaday*, 49 Ill.2d 416, 275 N.E.2d 356, and *People v. Hanna*, 42 Ill.2d 323, 247 N.E.2d 610.

Finally, in the *Wolf* case the court found the VIN number may be considered as quasi-public information intended for view by persons other than the owner of the automobile. We can perceive no difference between the VIN number affixed to the door of the car and the serial number stamped upon the frame of a vehicle which may be viewed without entry into the vehicle, nor from an engine serial number that may be viewed by lifting the hood, an action commonly and regularly performed by filling station attendants and mechanics. Neither location can be considered as a place of privacy protected by the fourth amendment.

Affirmed.

KARNS and CARTER, JJ., concur.

SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant has filed a petition for rehearing in the instant case based upon our ruling on the third issue presented for review. Defendant contends that the information supplied by the citizen informer fell short of establishing probable cause for either the initial stop of the truck or the viewing of the VIN plate by Officer Nunn.

■■ As to that portion of defendant's contention pertaining to the viewing of the VIN plate, we need only reiterate that Officer Nunn checked the VIN plate only after he had been given permission to do so by the driver of the truck. It is well settled that a specifically established exception to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Zap v. United States*, 328 U.S. 624, 90 L.Ed. 1477, 66 S.Ct. 1277, *vacated on rehearing on other grounds*, 330 U.S. 800, 91 L.Ed. 1259, 67 S.Ct. 857; *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed.2d 854, 93 S.Ct. 2041.

Furthermore, as the Supreme Court recognized in *Schneckloth v. Bustamonte*, one in possession of an automobile, who is not the owner, can validly consent to a search of the automobile. In that case a police-

man stopped a car after observing that one headlight and the license plate light were burned out. In the car were six men, three in the front seat and three in the back seat. Joe Alcala, one of the men in the front seat, not the driver, claimed that the car belonged to his brother who was not present. Alcala consented to a search of the car, which led to the discovery of evidence of a crime. Recognizing the validity of the search, without specifically commenting upon the fact that Joe Alcala was not the car owner, the court stated:

> "In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence. In the present case for example, while the police had reason to stop the car for traffic violations, the State does not contend that there was probable cause to search the vehicle or that the search was incident to a valid arrest of any of the occupants. Yet, the search yielded tangible evidence that served as a basis for a prosecution, and provided some assurance that others, wholly innocent of the crime, were not mistakenly brought to trial. And in those cases where there is probable cause to arrest or search, but where the police lack a warrant, a consent search may still be valuable. If the search is conducted and proves fruitless, that in itself may convince the police that an arrest with its possible stigma and embarrassment is unnecessary, or that a far more extensive search pursuant to a warrant is not justified. In short, a search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity." (412 U.S. 218, 227-28, 36 L. Ed.2d 854, 863, 93 S.Ct. 2041, 2048.)

By allowing the employee-driver to exercise authority over the truck by operating it on the public highway, defendant assumed the risk that the driver would allow someone to look at the inside of the door where the VIN plate was located. See *Frazier v. Cupp,* 394 U.S. 731, 22 L.Ed.2d 684, 89 S.Ct. 1420.

The more important concern with respect to defendant's present contention is whether the initial stop by Officer Nunn was justified. We are of the opinion that it was. Officer Nunn stopped the truck after being directed to do so by Sergeant McEuen. Sergeant McEuen had earlier received a call from a private citizen (whom he had known for two or three years) informing him that the described truck was stolen. He had then driven to the area mentioned by the informer and observed the vehicles there. The truck which he directed Officer Nunn to stop was

the only truck completely fitting the description given by the informer.

Defendant argues that the private citizen-informer's tip and observations made by Sergeant McEuen cannot constitute probable cause for the stop by Officer Nunn. Even assuming these factors to not constitute probable cause, we must nevertheless conclude the stop was justified. Beginning with *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868, the Supreme Court has recognized that a police officer may legitimately make an investigatory stop of an individual, based upon the officer's suspicion, short of probable cause, that criminal activity is occurring. The court stated:

> "One general [and legitimate governmental] interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. 1, 22, 20 L.Ed.2d 889, 906, 88 S.Ct. 1868, 1880.

While *Terry* concerned an investigatory stop of a pedestrian whose activity had been personally observed by the policeman and also dealt with the validity of a "frisk" following such a stop, the effect of the *Terry* ruling with respect to investigatory stops is not limited to pedestrian situations or to situations involving a "frisk" as well as a stop. In *Adams v. Williams*, 407 U.S. 143, 32 L.Ed.2d 612, 92 S.Ct. 1921, a police officer, acting upon an informant's tip, approached a car in which a man (Williams) was seated, in order to investigate the informant's report. The officer tapped on the window and asked the occupant to get out of the car. Instead of getting out of the car, the occupant rolled down the window, whereupon the officer reached inside the car and removed a gun from the man's waistband. The man was then arrested and a subsequent search of the car produced other weapons and narcotics. Before the Supreme Court Williams contended that the initial seizure of the pistol was unjustifiable on the informant's tip, absent a more reliable informant or some corroboration of the tip. With respect to the officer's approach to the car, or the initial "stop," the court found justification based upon that portion of *Terry* quoted above. The court then went on to state:

> "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. [citation] A brief stop of a suspicious individual, in

order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." 407 U.S. 143, 145-46, 32 L.Ed.2d 612, 617-18, 92 S.Ct. 1921, 1923. Very recently the validity of an investigatory stop was again recognized by the Supreme Court in *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed.2d 607, 95 S.Ct. 2574. In that case the court stated that law enforcement officers policing the United States-Mexican border could briefly stop a vehicle to investigate circumstances which reasonably provoke suspicion that the vehicle is carrying aliens illegally into the country. The court went on to hold, however, that in that particular case the officers were unjustified in stopping the car, since the only factor upon which the officers had relied in stopping the car was that the occupants appeared to be of Mexican ancestry. Mexican appearance, though a relevant factor, cannot alone justify stopping all Mexican-Americans to investigate the status of their citizenship.

Numerous other Federal and Illinois cases applying *Terry* and *Williams* have found investigatory stops to be justified under varying sets of facts leading to reasonable suspicion but short of probable cause. See, for example: *Ballou v. Massachusetts* (1st Cir. 1968), 403 F.2d 982, cert. denied, 394 U.S. 909, 22 L.Ed.2d 222, 895 S.Ct. 1024; *United States v. Grandi* (2d Cir. 1970), 424 F.2d 399, cert. denied, 409 U.S. 870, 34 L.Ed.2d 121, 93 S.Ct. 199; *United States v. Harflinger* (8th Cir. 1970), 436 F.2d 928, cert. denied, 402 U.S. 973, 29 L.Ed.2d 137, 91 S.Ct. 1660; *United States v. Sanchez* (10th Cir. 1971), 450 F.2d 525; *United States v. Adams*, 484 F.2d 357; *United States v. Hernandez* (7st Cir. 1973), 486 F.2d 614, cert. denied, 415 U.S. 959, 39 L.Ed.2d 574, 94 S.Ct. 1488; *United States v. Cage* (10th Cir. 1974), 494 F.2d 740; *People v. Tassone*, 41 Ill.2d 7, 241 N.E.2d 419, cert. denied, 394 U.S. 965, 22 L.Ed.2d 567, 89 S.Ct. 1318; *People v. Lee*, 48 Ill.2d 272, 269 N.E.2d 488; *People v. Watson*, 24 Ill.App.3d 237, 321 N.E.2d 187; *People v. Ussery*, 24 Ill.App.3d 864, 321 N.E.2d 718; *People v. Housby*, 26 Ill.App.3d 92, 324 N.E.2d 465; *People v. Brisbon*, 26 Ill.App.3d 268, 324 N.E.2d 644. Also see Ill. Rev. Stat., ch. 38, §107—14.

In the instant case Officer Nunn was justified in making an investigatory stop of the truck based upon the informer's report and Sergeant McEuen's determination that the truck stopped was the only truck fitting the description given by the informer. The subsequent viewing of the VIN plate by Officer Nunn was justified because of the driver's consent. The petition for rehearing is therefore denied.

KARNS, P. J., and CARTER, J., concur.