THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
ANDREW SANDERS, Defendant-Appellee.

Fifth District   No. 75-328

Opinion filed December 16, 1976.

JONES, J., dissenting.

Herbert J. Lantz, Jr., State's Attorney, of Chester (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Michael J. Rosborough and A. Michael Kopec, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

This is an appeal by the State from an order of the Circuit Court of Randolph County granting the motion of defendant-appellee Andrew G. Sanders to suppress evidence seized from the trunk of his car pursuant to a warrantless search.

The defendant was indicted for possession of more than 30 grams but less than 500 grams of cannabis, in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1973, ch. 56½, par. 704(d)). A preliminary hearing was held at which only one witness, the arresting

officer, testified. At the conclusion of the testimony, an oral motion by the defense to suppress the evidence was denied, on the ground that the defendant had consented to the search. The trial court did, however, grant defense counsel's request to reconsider the issue upon submission of briefs. No additional evidentiary hearing was held on the motion to suppress; the parties agreed that the evidence adduced at the preliminary hearing could be considered along with the briefs in determining the motion. After consideration of the motion and the briefs, the court entered an order granting the motion on the grounds that the defendant had a right to revoke his consent to the search, and any search after revocation of consent was illegal and in derogation of the defendant's rights under the State and Federal constitutions. This appeal pursuant to Supreme Court Rule 604 (Ill. Rev. Stat. 1973, ch. 110A, par. 604) followed.

The relevant facts, as adduced at the preliminary hearing, are not in dispute. Michael Thomas Korando, Jr., a patrolman in the Chester police department, testified that in the early morning hours of June 29, 1974, he was on patrol in a marked squad car with two other police officers. About 1:30 a.m., Patrolman Korando observed the defendant in a telephone booth on State Street in Chester. When the defendant finished his conversation, he returned to his automobile and drove to Reaban's parking lot, some 3½ blocks away. Just as the defendant was leaving the phone booth, according to Korando's testimony, "we received a call from our dispatcher that there had been someone made a report by phone to her that Andrew Sanders was carrying three lids of grass and some beer in the trunk of his car." Therefore the police officers followed him to the parking lot, at which time, according to Korando, the following sequence of events occurred:

"I walked over to the car and I said, Andy did you call the police station just then. I saw you were on the phone there. And he says, no, I didn't call the police station. I was talking to a girl. If you want to check, call and ask him [sic] and at that time I said I believed him and asked if we would [sic] look into his trunk.

Q. What did the defendant do or say at that time?

A. At that time the defendant took the keys from the ignition of his car and walked to the rear and opened his trunk.

* * *

Q. Did he say anything to you prior to opening the trunk?

A. No, sir.

Q. After he opened the trunk what did you do, if anything?

A. He opened the trunk and opened the beer cooler and I looked in the beer cooler and I started moving towards the right and I picked up the top of the air cleaner that was laying there and I started moving over to the right side further yet, and I went to

reach for a paper sack that was sat on top of the styrofoam cooler—

Q. Officer, let me interrupt you for a minute. What did that paper sack look like, if you recall?

A. Brown paper bag like you get in stores.

Q. And go ahead, and you started, you reached for the paper sack.

A. Whenever I reached for the sack, the defendant stated I couldn't look at everything. He grabbed it from me and said I couldn't look in there.

Q. And what did you do, if anything?

A. I grabbed the sack back from the defendant and whenever I grabbed at the sack it tore and I saw there were smaller plastic bags inside the brown sack and they contained green substance and so I opened them up after I got away and found green substances in small bags that appeared to be marijuana, cannabis.
* * *

Q. Officer, after you grabbed the bag back from the defendant, what did the defendant say, if anything, if you recall?

A. Nothing at this time.

Q. What did you do at that time?

A. At this time I placed him under arrest for possession of cannabis."

On cross-examination, Officer Korando testified that the dispatcher did not say who made the call that the defendant was carrying marijuana and beer in the trunk of his car, and that the officer had never determined who made the call. The defendant had not committed any crime in the officer's presence, there were no charges pending againt him and the only reason for stopping him was the dispatcher's report as to the anonymous call. On cross-examination the officer repeated that he had asked defendant "if we could look into his trunk." The defendant was not under arrest at this time. The officer did not advise the defendant of his right not to consent to the warrantless search.

On appeal, the State makes two arguments: first, that a consent search is valid where the defendant does not communicate his withdrawal of consent until the officer is in the process of seizing the evidence; second, that the officer had probable cause to seize the paper bag even absent consent, because the anonymous tip was sufficiently corroborated by the officer's observation of the beer cooler and the brown paper bag in the trunk. The defendant responds first that the scope of consent was limited by both the officer's request and the defendant's words to *looking into* the trunk, and that his consent was effectively withdrawn; second, that there were no corroborative facts, and that in any event the State has waived

this contention for purposes of appeal by its ioncession at the preliminary hearing, where it relied solely on consent to legitimate the search, that no probable cause existed.

■■ ■ We must start from the settled proposition that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (*Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 585, 88 S. Ct. 507, 514 (1967).) Consent to a search, which waives constitutional protection, is one of these recognized exceptions. (See, *e.g.*, *People v. Harris*, 34 Ill. 2d 282, 215 N.E.2d 214 (1966), *cert. denied*, 384 U.S. 993, 16 L. Ed. 2d 1009, 86 S. Ct. 1900 (1966).) Protection extends wherever the subject of a search possesses a reasonable expectation of privacy. (*Katz v. United States; People v. Nunn*, 55 Ill. 2d 344, 304 N.E.2d 81 (1973), *cert. denied*, 416 U.S. 904, 40 L. Ed. 2d 108, 94 S. Ct. 1608 (1974).) The test of a valid consent is voluntariness under the totality of the circumstances, which include the subject's knowledge of his constitutional right to refuse consent. (*People v. Nunn; Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973).) In each case the determination of the factual question whether a valid consent was given is for the trial court, whose finding will be accepted by a court of review unless it is clearly unreasonable. *People v. Cannon*, 25 Ill. App. 3d 737, 323 N.E.2d 846 (1st Dist. 1975), and cases cited therein.

■■ We have carefully reviewed the record in this case, and the authorities cited by the parties, and cannot find the trial court's determination that the police officer's search exceeded the scope of the defendant's consent to be clearly unreasonable. The officer asked the defendant, with whom he was on a first-name basis and who was not under arrest, if he could *look* into the trunk. The defendant might reasonably have expected that the officer was looking for some bulky item of stolen property that would be immediately apparent if present in the trunk of an automobile. By acquiescing in the request to look into his trunk, he did not, we think, consent to a probing exploration into a closed container within the trunk.

Two cases add support to our conclusion. In *People v. Schmoll*, 383 Ill. 280, 48 N.E.2d 933 (1943), the defendant, a physician, agreed that the State's attorney could go to his office to obtain his records in one case. Instead, *all* the doctor's records were taken, and subsequently he was convicted of performing an illegal abortion on the basis of some of the other records. In holding that the defendant's motion to suppress the evidence should have been allowed, Chief Justice Stone of the Illinois Supreme Court wrote:

"\* \* \* An arresting officer has no more right to make a search

beyond the limit prescribed in a consent to search, than he has to exceed the limit prescribed in a search warrant. The latter he has no right whatever to do. * * *

As was said in *People v. Castree*, 311 Ill. 392: 'A search without a warrant is an unreasonable search, and a search of a place not described is without a warrant and is unreasonable.' It is true that one who consents to a search of his property waives his constitutional right to complain that the search and seizure were unlawful. [Citations.] But since consent amounts to a waiver of such warrant, the consent must, in our opinion, be considered a waiver of such warrant only to the extent granted by the defendant in his consent. To that extent, only, does the consent embrace the character of a valid search warrant." 383 Ill. 280, 283-84, 48 N.E.2d 933, 934.

In *United States v. Dichiarinte*, 445 F.2d 126 (7th Cir. 1971), defendant was convicted of tax evasion, largely on the basis of evidence seized during a search of his home. Defendant had been arrested on the basis of a warrant charging him with a sale of narcotics. When asked whether he had any narcotics in his home, defendant replied that he had never seen any narcotics, and said: "You guys come over to the house and look, you are welcome to." After the search had progressed for about 45 minutes, one of the Federal narcotics agents began to remove certain papers from a drawer. The defendant asked, "Does that look like narcotics if that is what you want to search for?" and the agent replied, "Sorry, Pal, we are here now and this is what we are going to do." The defendant announced: "The search is over. I am calling off the search." The agents, however, continued their search and seized a number of documents which were subsequently turned over to internal revenue agents. In holding that the evidence should have been suppressed, Chief Judge Swygert wrote:

"A consent search is reasonable only if kept within the bounds of the actual consent. *Honig v. United States*, 208 F.2d 916, 919 (8th Cir. 1953).

* * *

* * *In our view, consent is a waiver of the right to demand that government agents obtain the authorization of a warrant to justify their search; and the need for a warrant is waived only to the extent granted by the defendant in his consent. A defendant's consent may limit the extent or scope of a warrantless search in the same way that the specifications of a warrant limit the search pursuant to that warrant. Both limit the officers' activity by stipulating the areas into which they may look. Both may limit a search to certain areas or even to certain specified items within an area. [Citations.]

* * *

Of course, if the government agents acting within the parameters of defendant's consent had come upon contraband, fruits or instrumentalities of crime, or clear evidence of criminal behavior which was lying in plain view, they could have seized those items. [Citation.] * * * Even assuming that these items were evidence of crime and thus subject to seizure, their criminal character was not apparent on a mere surface inspection, and defendant's limited consent did not authorize the agents' opening and reading them." 445 F.2d 126, 129-31, and n. 3.

*United States v. Young*, 471 F.2d 109 (7th Cir. 1972), cited by the State, is clearly distinguishable from the case at bar. There, the attempted rescission of consent took place only *after* the evidence which was the subject of the motion to suppress had been seized in plain view. When the defendant told the officers to stop their search, they did so.

■■ Here, when the officer began to reach for the brown paper bag "like you get in stores," whose criminal character was not apparent on mere surface inspection, the defendant grabbed it from him and told him that he could not look in there. We cannot see how the defendant could have expressed more clearly that his consent did not extend to looking inside the paper bag. Thus the officer's grabbing the bag from him was an unreasonable search and seizure, the fruits of which were properly ruled inadmissible into evidence.[1]

■■ We do not think that the State's other contention, that the officer had probable cause to search the defendant's trunk and seize the marijuana even absent consent, was properly preserved for review. At the preliminary hearing which was the evidentiary basis for the trial court's ruling on the motion to suppress, the State's attorney stated that he did not consider probable cause important in the determination of the matter, and that "the whole point is that this was a consent search." We see no compelling reason to treat waiver by the State any differently from waiver by the defendant. See, *e.g., People v. DeBoise*, 35 Ill. App. 3d 298, 341 N.E.2d 483 (5th Dist. 1976).

Had the argument been made below, we would nonetheless be constrained to reject it. In *Aguilar v. Texas*, 378 U.S. 109, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (378 U.S. 109) (1964), and *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969), the United States Supreme

---

[1] The instant case well illustrates the definitions set out in *People v. Carroll*, 12 Ill. App. 3d 869, 875, 299 N.E.2d 134, 139 (1st Dist. 1973):

"A 'search' is a probing or exploration for something that is concealed or hidden from the searcher. A 'seizure' is a forcible or secretive dispossession of something against the will of the possessor-owner, both terms connoting hostility between the searcher and the person whose property or possession are being searched or sought. [Citations.] A search is an invasion, a quest with some sort of force, either actual or constructive."

Court set out a "two-pronged test" that an affidavit for a search warrant based on an informer's tip must meet.[2] First, it must demonstrate some of the underlying circumstances from which the informer concluded that the law was being violated (the so-called "basis of knowledge" prong), and second, the affiant's reasons for concluding that the informer was credible or his information reliable (the so-called "veracity" prong). Even if we were to accept the State's assertion that the unidentified informer here must be presumed to be an ordinary citizen with no motive to falsify, and thus that his or her veracity need not be shown (see *People v. Hester*, 39 Ill. 2d 489, 514, 237 N.E.2d 466, 481 (1968)), there would still be absolutely no indication of the basis of the informer's knowledge. The tip might be the product of mere suspicion or common rumor, which do not afford probable cause. *In re Brewer*, 24 Ill. App. 3d 330, 320 N.E.2d 340 (5th Dist. 1974).

Nor is *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959) helpful to the State's position. The tip here could hardly be said to contain a plethora of neutral details from which it could reasonably be inferred that the informant gained his information in a reliable way. The informer said only that the defendant had beer and grass in the trunk of his car. The State's argument that the tip was corroborated by the officer's finding beer in the trunk is not borne out by the record: there was no evidence that any beer was discovered.

A recent case also arising from Randolph County and involving possession of marijuana, *People v. Blitz*, 38 Ill. App. 3d 419, 347 N.E.2d 764 (5th Dist. 1976), is distinguishable from the instant case on the issue of probable cause primarily by the fact that there the police had an ostensible reason besides the anonymous tip—a faulty license plate light—for arresting the defendant. Responding to the State's argument that "corroborative" observations operated to cure whatever deficiency existed with reference to the reliability of the State's unidentified informant, we said:

> "While the legality of warrantless searches of automobiles differs from searches of stationary structures [citations], the police must still have ' "reasonable or probable cause" to believe that they will find an instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search.' [Citation.] The record before us does not contain evidence that deputy sheriff Beam had reasonable or probable cause to believe that evidence pertaining to a crime would be found in defendant's vehicle. As far as the record

---

[2] The same test applies where, as here, a warrantless search is attacked by a motion to suppress, with the distinction that in a marginal case a search under a warrant might be sustained which would fall without a warrant. See *United States v. Ventresca*, 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

shows, Officer Beam conducted a search of the defendant's vehicle because he suspected that there might be illegal substances in such car, however, the facts related by Beam are insufficient to constitute probable cause." 38 Ill. App. 3d 419, 422, 347 N.E.2d 764, 766.

The record here is equally devoid of any showing of probable cause. We are mindful, as the dissent states, that courts have recognized a distinction in certain circumstances between a search of a house and a search of an automobile. But "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." (*Coolidge v. New Hampshire*, 403 U.S. 443, 461-62, 29 L. Ed. 2d 564, 580, 91 S. Ct. 2022, 2035 (1971).) Probable cause remains a prerequisite to a search. As our supreme court said in *People v. Pitts*, 26 Ill. 2d 395, 399, 186 N.E.2d 357, 359 (1962), if we were to validate a search such as this one, "we would not dilute the constitutional guarantees, we would abolish them."

For the foregoing reasons, the order of the Circuit Court of Randolph County granting the motion to suppress evidence is affirmed.

Affirmed.

G. J. MORAN, J., concurs.

Mr. JUSTICE JONES, dissenting:

I believe that the result reached by the majority is manifestly erroneous and accordingly I respectfully dissent.

Despite my agreement with the majority's conclusion that defendant did not consent to the search of the paper bag found in the trunk of his car and the seizure therefrom of marijuana, I cannot agree that the warrantless search and seizure were unlawful.

Courts have long held there exists a constitutional difference between automobiles and homes, a difference that may in some situations justify a warrantless search. (*Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280; *Cady v. Dombrowski*, 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523; *People v. Wiseman*, 59 Ill. 2d 45, 319 N.E.2d 225.) This difference primarily turns on the mobility of automobiles and the impracticability of obtaining a warrant in many circumstances. (*E.g., Carroll v. United States; Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *People v. Johnson*, 13 Ill. App. 3d 204, 300 N.E.2d 535.) The lesser expectation of privacy in an automobile is also important. *South Dakota v. Opperman*, __ U.S. __, 49 L. Ed. 2d 1000, 96 S. Ct. 3092.

Whether or not the actions of Officer Korando were justifiable depends upon "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." (*Brinegar v. United States*, 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302; *People v. Hester*, 39 Ill. 2d 489, 237 N.E.2d 466.) The anonymous tip here provided sufficient justification based on the objective standard of reasonable suspicion articulated in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, for the stop of the car (*Adams v. Williams*, 407 U.S. 143, 32 L. Ed. 2d 612, 92 S. Ct. 1921; *People v. Tassone*, 41 Ill. 2d 7, 241 N.E.2d 419, *cert. denied*, 394 U.S. 965; *People v. Miller*, 36 Ill. App. 3d 542, 548-51, 345 N.E.2d 1) and initial questioning of defendant. When the officer later observed the paper bag on top of the beer cooler in defendant's trunk and heard defendant's protestations, both of which were corroborative of the tip, he gained sufficient knowledge to warrant a reasonable belief that the bag contained an illegal substance. In light of these circumstances this belief gave him probable cause to search. *Chambers v. Maroney; People v. Canaday*, 49 Ill. 2d 416, 275 N.E.2d 356; *People v. Miller*.

Once probable cause had been established in the present case, the officer was justified in grabbing and then searching the paper bag he saw in defendant's trunk for the reasons articulated in the foregoing cases. Exigent circumstances were present. If allowed to go on his way, defendant could easily have disposed of the contraband. The time was early morning and in this case it would have been impractical to obtain a warrant. Moreover, the reason for conducting the search was the same one that had prompted the officer to stop and question defendant. Consequently, I am convinced that the instant warrantless search was a reasonable one.

I would reverse the order of the circuit court of Randolph County and remand the cause for further proceedings.